# PICO *v.* UNITED STATES.

ERROR TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 319.   Argued February 25, 26, 1913.—Decided April 7, 1913.

Under art. 403, Philippine Penal Code, a person can be guilty of murder with alevosia (treachery) although there may have been no specific intent to kill; and so *held* that one who had his victim bound and then caused him to be violently beaten with an instrument likely to cause death was guilty of murder with *alevosia* even though he did not specifically intend that death should result.

Under the Philippine Penal Code, as at common law, men are presumed to intend the natural consequences of their acts.

An objection that a complaint charging murder with *alevosia* by beating a person to death is defective because it did not allege all the details proved as to the fact that the victim had been bound so as

to make defense impossible, should be made in the lower court where amendments are possible. . It comes too late when made in this court for the first time.

The conviction by the Supreme Court of the Philippine Islands for murder-with alevosia of one who had caused his victim to be bound and then beaten with an instrument likely to cause death, and a sentence of 17 years, 4 months and 1 day of cadena temporal and the accessories, and an indemnity to the heirs of his victim of 1,000 pesos, being a modification of the sentence of the Court of First Instance of, cadena temporal for life and accessories and indemnity, sustained by this court as being in accordance with the evidence, without error of law and not in any manner-depriving the defendant of his liberty without due process of law.

15 Phil. Rep. 549, affirmed.

THE facts, which involve the validity of a conviction and sentence for murder in the Philippine Islands, are stated in the opinion.

*Mr. Clement L. Bouvé* for the plaintiff.in error:

The Supreme Court of the Philippines erred in convicting the accused of the crime of murder since the complaint is so formed that it will not support a sentence for murder under the Spanish law. See article 403, Penal Code, Philippine Islands.

. As to what "killing a person with alevosia" means, see par. 2, art. 10, Penal Code.

The complaint contains no allegation of such treacherous intent as is necessary to constitute the charge of murder with alevosia. See Viada Codigo Penal, vol. III, pp. 24–25.

The Supreme Court of the Philippine Islands erred in convicting plaintiff in error of murder with treachery, finding as it did as a matter of fact that he did not intend to kill the deceased.

The intent to kill is, under the Spanish law as it is in our own, of the very essence of the crime of murder. Sent., June 13, 1887; Viada Codigo Penal, vol. III, 647; *United States* v. *Dasilva,* 14 Phil. Rep. 413; *United States*

v. *Mercoleta,* 17 Phil. Rep. 317; *United States* v. *Balagtas,* 19 Phil. Rep. 164.

The defenceless situation of the victim, coupled with the intent to kill, does not make the killing murder.

The Supreme Court erred in affirming the finding of the court below that plaintiff in error killed the deceased, in that there is no evidence as a matter of law that deceased died as the result of blows inflicted by plaintiff in error. *Wiborg* v. *United States,* 163 U. S. 652; *Clyatt* v. *United States,* 197 U. S. 207, 222; *Diaz* v. *United States,* 223 U. S. 442.

The testimony, both expert and non-expert, does not sustain the conviction.

The punishment imposed upon plaintiff in error of seventeen years, four months and one day of cadena temporal and the accessory penalties provided by law, constitutes a cruel and unusual punishment within the Eighth Amendment as incorporated into the Philippine Bill of Rights. *Weems* v. *United States,* 217 U. S. 349, 382.

*Mr. Solicitor General Bullitt,* with whom *Mr. Loring C. Christie* was on the brief, for the United States:

The complaint is sufficient to support a sentence for murder under the Spanish law. Philippine Penal Code, art. 403.

The Supreme Court of the Philippine Islands had the right to modify the judgment of the trial court and to impose upon the defendant the modified sentence. Philippine Penal Code, art. 403; *Ker & Co.* v. *Couden,* 223 U. S. 268, 279.

The evidence sustained the finding that the Chinaman died as the result of the blows inflicted by appellant.

The sentence imposed is not a cruel and unusual punishment in violation of the Philippine Bill of Rights. The punishment was not too great for the crime of murder. *Weems* v. *United States,* 217 U. S. 349, does not control, as

in that case the punishment was disproportionate to the trifling crime involved. The requirement of "painful" labor becomes unobjectionable when properly translated—a fact which did not appear in the *Weems Case*.

The provision for carrying chains and for surveillance for life were annulled upon the American occupation of the Philippines and are no longer imposed. *Chicago & Pac. Ry. Co. v. McGlinn*, 114 U. S. 542; *Downes v. Bidwell*, 182 U. S. 244, 298; *Forbes v. Chuoco Tiaco*, 16 Phil. Rep. 534, 592; *Fremont v. United States*, 17 How. 542, 565; *Ortega v. Lara*, 202 U. S. 339; *Sanchez v. United States*, 216 U. S. 167; *Vilas v. Manila*, 220 U. S. 345, 357; Davis on International Law (1903 ed.), 348; Halleck on International Law (3d ed.), 486–490; Risley, Law of War, 136; Instructions of President McKinley to the Philippine Commission, April 7, 1900.

The punishment in this case is in fact fairly proportioned to the crime committed.

The objectionable portions of the punishment may be held invalid without affecting the balance of the punishment.

MR. JUSTICE LAMAR delivered the opinion of the court.

Juan Pico, claiming the right as Patrol to arrest suspicious persons in the Hacienda of Maluno, within the municipality of Ilagan, Province of Isabela, Philippine Islands, on March 1, 1909, entered the house of Eugenio Castellanes in the night time and inquired if there was any one else on the premises. He was told that there was a Chinaman asleep in the next room, and, going there with several attendants, ordered him to get up. Receiving no answer, Pico struck him with a gun. The Chinaman arose and seized the gun as Pico again attempted to strike him. After some altercation, he was overpowered, and Pico ordered his attendants to bind him. This they did, putting a rope around his neck, tying his arms behind

his back, and, in this condition, he was ordered out of the house for the purpose of being taken to the nearby Hacienda, of which Pico was manager. Whether through unwillingness or physical inability resulting from the blow previously inflicted, does not clearly appear, but the Chinaman refused to walk and Pico again struck him several times with the gun. Partly dragged and partly carried, the Chinaman was in a state of collapse when he reached the Hacienda, where, a few hours later, he died. The next morning at 8 o'clock he was buried,—a medical employé on the estate giving a certificate that he had died of heart failure. The suspicion of the authorities having been aroused the body was disinterred, and, as it exhibited signs of external violence, Pico and two of his attendants were arrested, Pico being charged "with the crime of murder, with the qualifying circumstance of alevosia (treachery) as defined and penalized in § 403 of the Penal Code,[1] in that . . . he feloniously ordered his two servants to seize and tie the Chinaman, Go-Siengco, and thus tied and unable to defend himself the said Pico, with the intention of killing the said Chinaman, struck him several blows with a shotgun, as the result of which blows the Chinaman subsequently died."

---

[1] Art. 403. The crime of murder is committed by any person who, not falling within the terms of the next preceding article [relating to Parricide], shall kill another under any of the following circumstances:

1. With alevosia.
2. For a price or promise of reward.
3. By means of inundation, fire, or poison.
4. With evident premeditation.
5. With cruelty by deliberately and inhumanly increasing the suffering of the offended party.

Art. 10, § 2. There is treachery (alevosia) when the offender commits any of the crimes against the person, employing means, methods, or forms in the execution thereof which tend directly and specially to insure its execution without risk to himself arising from the defense which the offended party might make.

The evidence for the Government was direct and positive and left no reasonable doubt as to the guilt of the defendant, unless the witnesses for the prosecution were unworthy of belief. Their credibility, though attacked, was sustained by the trial judge, who found the defendant guilty and sentenced him to cadena temporal, to be confined in the Bilibid Prison for the term of his natural life, with accessories named in Art. 54 of the Code, and to pay the heirs of the Chinaman 1,000 pesos. A motion for a new trial was overruled and on appeal the Supreme Court stated that only a question of fact was involved, and that the testimony for the Government, being direct and without elements of untruth, fully supported the findings of the trial court:

"We have only one criticism of the judgment below. We are convinced that the court, in imposing the penalty, should have taken into consideration in favor of the accused the extenuating circumstances described in Article 9, subdivision 3, of the Penal Code, namely, that 'the delinquent had no intention of committing so grave an injury as that which he inflicted.' There not having been present any aggravating circumstance, the penalty should have been imposed in its minimum degree." (15 Phil. Rep. 551.)

1. It is claimed that this finding was in legal effect an acquittal, and several decisions of the Supreme Court of Spain are cited to support the argument that there can be no "murder with alevosia" unless there was a specific intent to kill the person bound. We cannot so construe the Philippine Code. Under it the killing of a human being is parricide, murder or homicide, depending, not always on the intent, but upon the relation of the parties and the circumstances under which and the means by which life was taken. On the trial of a charge of "murder with premeditation," there might be call for proof of a specific intent, but even then that could usually

be established only by external circumstances capable of proof. But in the case of murder with cruelty or with alevosia, the intent would be immaterial, although the accused might claim that he thought that the cruelty would not cause death or that the beating would punish and not destroy the person who was bound. Under the Penal Code of the Philippines, as at common law, men are presumed to intend the natural consequences of their act and cannot escape punishment for taking life on the claim that they had not intended or expected that such consequence would result from what they purposely did.

In this case Pico was not charged with "murder with evident premeditation." As the Chinaman was, at the time, bound and defenseless, Pico was guilty of "murder with the aggravating circumstance of alevosia," punishable by the minimum, medium or maximum penalty, depending on the presence or absence of mitigating or aggravating circumstances, as defined by the Code,[1] which permitted effect to be given to the absence of a specific intent by a mitigation of the punishment. This we understand to be the effect of the decision of the Supreme Court of the Philippine Islands, and not, as claimed, an acquittal of the charge on which Pico was tried. *United States* v. *Brobst,* 14 Phil. Rep. 310; *United States* v. *Candelaria,* 2 Phil. Rep. 104.

The decisions cited by plaintiff in error do not require a reversal, for none of them relate to a case like this, where the accused, having himself ordered his victim to be bound, consciously, intentionally and repeatedly beat him with an instrument likely to produce death.

2. It was also contended that the complaint was defective in failing to allege that the Chinaman had been tied

[1] Art. 78. Aggravating circumstances which in themselves constitute a crime specially punishable by law or which are included by the law in defining a crime and prescribing the penalty therefor shall not be taken into account for the purpose of increasing the penalty.

for the purpose of making defense impossible and so that he might be killed without risk to the accused. This objection comes too late. It was not made in the Supreme Court nor in the trial court, where amendments could have been made even if necessary under the liberal system of criminal pleading authorized by §§ 6, 8, 9, and 10 of the Appendix to the Penal Code of the Philippine Islands.

3. Pico was sentenced by the Supreme Court to 17 years, 4 months and 1 day of cadena temporal, to the accessories provided by law and to indemnify the heirs of the deceased by the payment of 1,000 pesos. In the record there is an assignment of error that this was cruel and unusual punishment (*Weems* v. *United States*, 217 U. S. 349), but on the argument the contention was abandoned in open court, and the point will therefore not be considered. In other assignments complaint was made that Pico was deprived of his liberty without due process of law,—because the evidence was insufficient to prove beyond a reasonable doubt that the Chinaman died as a result of the blows inflicted by Pico; because the Supreme Court refused to pass upon the credibility of witnesses in the trial court; because he was refused a new trial on the ground of newly discovered evidence, and because one of the witnesses admitted to have given false testimony. We find no error of law. The evidence fully sustained the conviction, and the judgment is

*Affirmed.*