Lamneck, J.
The accused contends that the order of the Court of Appeals, dated April 13,1953, does not constitute a judgment or final order from which an appeal may be taken.
Section 13459-4, General Code (Section 2953.05, Revised Code), provides that an appeal may be filed as a matter of right “within thirty days after sentence and judgment.”
This section fixes the time within which an appeal may be taken and was intended to apply primarily to appeals from trial courts. In its application to an appeal from a final judgment of a trial court, an appeal cannot be taken until after sentence. In Cochrane v. State, 30 Ohio St., 61, the court held that an error proceeding could not be prosecuted from the trial court until after a final determination of the case therein.
In the instant appeal we have a different situation. There was a “sentence and final judgment” in the trial court. On appeal to the Court of Appeals this sentence and judgment was “reversed and held for naught.” It is this reversal that the state has asked this court to review.
Section 13459-1, General Code (Section 2953.02, Revised Code), provides in part in so far as it relates to this case that “a judgment or final order of the Court of Appeals in conviction of a felony * * * may be reviewed by the Supreme Court.”
Under this section this court has jurisdiction in a felony ease to review a “judgment” of the Court of Appeals as distinguished from a “final order.”
Is the entry of the Court of Appeals, dated April 13, 1953, a judgment from which an appeal may be taken?
1 Freeman on Judgments (5 Ed.), 3, Section 2, defines the word, “judgment,” as follows: “The conclusion of law in a particular case announced by the court ; the final consideration and determination of a court *216 of competent jurisdiction upon the matters submitted to it.”
The appeal to the Court of Appeals in the instant cause was on questions of law and that court fully announced its conclusion of the law involved, in its entry of April 13, 1953, when it “reversed and held for naught” the judgment of the Court of Common Pleas and entered a “judgment of conviction of manslaughter in first degree.”
The state, in prosecuting an appeal, may elect to appéal either from that “judgment” or from the “final order,” of sentence, if a sentence is imposed, for the reason that Section 13459-1, General Code, provides that a judgment or final order of the Court of Appeals in a felony case may be reviewed by this court.
.Under Sections 13449-1 and 13459-6, General Code (Sections 2945.79 and 2953.07, Revised Code), the Court of Appeals, where the evidence shows the accused to be not guilty of the degree of crime of which he was convicted, but guilty of a lesser crime included therein, may modify the conviction, without ordering a new trial, and pass sentence on such modified conviction. See State v. Porello, 138 Ohio St., 239, 34 N. E. (2d), 198.
The Court of Appeals may do this, however, only as provided in subdivision 4 of Section 13449-1, General Code (Section 2945.79, Revised Code), if “the verdict is not sustained by sufficient evidence.” If the evidence is insufficient to sustain the finding and judgment of the Common Pleas Court as to murder in the second degree but is sufficient as to manslaughter in the first degree, then the Court of Appeals may modify the judgment of the Court of Common Pleas. Under State v. Porello, supra, such modification is not a reversal on the weight of the evidence.
However, if there is sufficient evidence in the record to warrant the finding and judgment of the Court of *217 Common Pleas, the Court of Appeals may not substitute its judgment as to what the- evidence shows for that of a jury or a three-judge court, where a jury trial has been waived, as a basis for modification.
Section 13459-1, General Code, provides in part that the Supreme Court on review ‘ ‘shall not be required to determine as to the weight of the evidence.” Since the action of the Court of Appeals was a modification of the judgment of the Court of Common Pleas and not a reversal on the weight of the evidence, this court has jurisdiction to determine whether the Court of Appeals was warranted in substituting its judgment as to the facts shown by the evidence for that of the three-judge court sitting in lieu of a jury.
There is testimony in the record, although contradicted in some details, to support the following:
On June 7,1952, between 10:30 p. m. and 11:00 p. m., a number of persons were in the “Spaghetti House” located at 33 Adams street in Campbell, Ohio. One of the patrons put a coin in a music box and, before the playing of the record was completed, another patron cancelled it out by inserting a coin. The first patron then inserted another coin which cancelled out the second record.
Thereupon an argument occurred. The proprietress then threatened to call the “law.” The second patron then invited the first patron outside and a number of others followed.. Neither the accused nor the deceased was in the “Spaghetti House.” An altercation then followed in which several persons were injured including one Amos Ivory who was seriously cut and bruised about the face. The police were summoned and a number of the participants, including Amos Ivory, were arrested and taken to the police station.
At the time of this altercation, the accused, his wife, and Mrs. Ivory were in the home of the accused’s sister, located at 37 Adams street, playing cards with *218 a group of people. The accused’s car was parked at 45 Adams street, which is between 100 and 200 feet north of the “Spaghetti House.”
The accused claimed he left the card game to meet a man named Lucius Mealer who owed him some money. He testified that, in going south from where his car was parked,- he was attacked by some members of a group in front of the ‘ ‘ Spaghetti House. ’ ’ He claimed that in order to defend himself he broke loose, reversed the southerly course, which he had taken, returned north to his car, unlocked the glove compartment, and secured a pistol. He then returned to the scene of the scuffle, and when he was about 20 feet away he started shooting promiscuously. He fired four or five shots, one of them striking and killing the decedent.
The decedent and his brother were showing the “town” to two newcomers to Campbell and were walking north on Adams street. Although there is some evidence to the contrary, there is evidence to the effect that the decedent, his brother and their friends had not been involved in any way in any previous differences between the accused and other persons at the scene of the shooting, and that, although there was a crowd in front of the ‘ ‘ Spaghetti House ’ ’ at the time, there were no disturbances in progress when they approached the scene of the shooting.
Under Section 12403, General Code (Section 2901.05, Revised Code), “whoever purposely and maliciously kills another * * * is guilty of murder in the second degree. ’ ’
Two essential elements necessary to sustain a conviction of murder in the second degree are (1) an intent and purpose to kill, and (2) malice.
An intent to kill may be presumed where the natural and probable consequence of the wrongful act done is to produce death. It may be deduced from the surrounding circumstances, including the instrument used, *219 its tendency to destroy life if designed for that purpose, and the manner of inflicting the wound. In Pico v. United States, 228 U. S., 225, 57 L. Ed., 812, 33 S. Ct., 482, Justice Lamar said:
* * men are presumed to intend the natural consequences of their act, and cannot escape punishment for taking life on the claim that they had not intended or expected that such consequence would result from what they purposely did.” See State v. Gardiner, Wright, 392; State v. Robinson, 20 W. Va., 713, 43 Am. Rep., 799.
In Davis v. State, 25 Ohio St., 369, the third proposition of the syllabus reads as follows:
“Where the fact of killing is proven, malice is to be presumed, and all the circumstances of justification, excuse, or extenuation must be made out by the accused, unless they appear from the evidence adduced against him. ’ ’
Where one inflicts a mortal wound in a sudden affray or in heat of blood or passion, without time for reflection or for the passions to cool, he is guilty of manslaughter. If, however, it appears that the accused reflected, deliberated, or cooled between the time of provocation and the time the fatal stroke was given, or if in legal presumption there was time or opportunity for cooling, the killing was with malice and intent to kill. See 26 American Jurisprudence, 170, Section 24; State v. Schaeffer, 96 Ohio St., 215, 117 N. E., 220, L. R. A. 1918B, 945.
Whether a particular provocation has spent its force and what constitutes a reasonable time for cooling are ordinarily questions of fact for the jury (or, in this case, a three-judge court), and are not questions of law unless minds of reasonable men could not differ in the conclusion that a reasonable cooling time had not elapsed. See 26 American Jurisprudence, 510, Section 511.
*220 In the instant case there was evidence that the accused, after reaching his automobile, unlocked the glove compartment, armed himself with a gun, walked back towards the men with whom he had been previously involved, and shot and killed a man who is claimed to have been an innocent bystander. It was for the three-judge court, as the trier of facts, to determine whether the accused reasonably and honestly believed that his only means of escape from danger of death or serious bodily injury was by taking human life, or whether the killing was done in the heat of passion without sufficient time intervening for reflection or cooling off. There is sufficient evidence, in the record, to have warranted the three-judge trial court in concluding that the accused had sufficient time for reflection and for cooling off between the time of the alleged provocation and the time he fired the fatal shot.
The accused’s fourth assignment of error before the Court of Appeals reads as follows:
“The judgment of the court is not sustained by sufficient evidence and is against the manifest weight of the evidence.”
The Court of Appeals did not pass upon the weight of the evidence in its consideration of this cause.
The judgment of the Court of Appeals, in modifying the judgment of the Court of Common Pleas, is reversed, and this cause is remanded to the Court of Appeals to consider and pass upon the weight of the evidence.
Judgment reversed.
Weygandt, C. J., Middleton, Taut, Hart, Zimmerman and Stewart, JJ., concur.