## PULLMAN PALACE CAR COMPANY v. A. A. NELSON AND WIFE.

Decided December 4, 1899.

**1. Agency—Proof of—Sleeping Car Company.**

Evidence of the authority of a railroad ticket agent in contracting in behalf of a sleeping car company to reserve a berth in one of its cars may be made, as against its sworn plea of non est factum, by showing his prior acts of the same kind and the circumstances attending them, and that the company recognized other such contracts made by him.

**2. Same—Agency Presumed General.**

Where agency is once shown to exist, it is presumed, in the absence of proof to the contrary, to be general and not special.

**3. Same—Shown by Acts of Agents.**

Though agency itself may not be established by the acts of the agent, yet these acts are admissible, in connection with proof tending to show that the principal knew of and assented to them, or must have known of them.

**4. Evidence—Fact Peculiarly Within Knowledge of the Opposite Party.**

Where the proof tends to establish a fact, and it is within the power and to the interest of the opposing party to disprove it if false, his silence strengthens its probative force.

### 5.  Same—Proof of Telegraphic Message—Inference.

Proof of the receipt of a telegraphic message from a certain person, by the copy delivered, under circumstances similar to those under which other messages of the kind were received from him, authorizes an inference, in the absence of countervailing proof, that it was sent by him.

### 6.  Practice—Harmless Error.

Where no proof was offered as to certain allegations of damage in the petition, and they were not considered by the trial court in arriving at his judgment, error in failing to sustain exceptions to them is harmless.

### 7.  Damages—Sleeping Car Company—Sick Passenger.

Where a sleeping car company failed to reserve a berth for a sick lady, as its agent had agreed, and put her in the smoking compartment, and suffered her to be there kept awake, annoyed, and mortified by the entrance and profane talking of men, thus seriously aggravating her situation, a verdict for $900 damages was not excessive.

APPEAL from the County Court of Nacogdoches.  Tried below before Hon. V. E. MIDDLEBROOK.

*McCormick & Spence,* for appellant.

*Branch, Garrison & Blount,* for appellees.

GILL, ASSOCIATE JUSTICE.—The appellees, A. A. and Mattie L. Nelson, brought this suit against appellant, Pullman Palace Car Company, for damages for personal injuries, and upon trial before the court without a jury, judgment was rendered in favor of appellees for $900.

The allegations in the petition are to the effect that Mattie L. Nelson, wife of A. A. Nelson, being an invalid, and it becoming necessary to take her to Galveston that she might undergo a grave surgical operation, A. A. Nelson procured the railroad agent at Nacogdoches to wire to the agent of appellant at Shreveport to reserve a lower berth in appellant's sleeping car, and that appellant's agent at Shreveport, whose name is averred to have been W. L. Stout, replied by wire to the effect that a lower berth would be reserved for appellee as requested.  That said agent was advised of the illness of Mrs. Nelson in the message requesting the berth.  That by reason of these facts the appellant agreed and contracted to furnish appellees with a lower berth from Nacogdoches to Galveston on the date in question.  That relying upon the agreement, appellees, after procuring first-class railway tickets from that point to Galveston, boarded the train at Nacogdoches, fully expecting to find a berth reserved for their use.  That they found the door of the sleeper locked, but upon their final admission they found that no lower berth had been reserved for them.  That lower-nine, which had been promised them, had been let to another person, and all the other lower berths had been taken.  That on account of Mrs. Nelson's condition she could not use an upper berth.  That upon ascertaining the situation, the request was made that the train be stopped and appellees be let off, as she (Mrs. Nelson) apprehended grave injury to herself if compelled to sit up all

night.     That this was refused, but the agents of the appellant in charge of the car offered to make down a bed for them in the smoking compartment of the car, which was a place not adapted to the purpose; was where the trainmen usually slept, and was a place in which she could not have the privacy and comfort which would have been afforded her in a lower berth, such as had been contracted for.     That under the circumstances they were forced to accept the accommodations offered, for which was demanded $2, which sum they paid.     That as a result of the poor accommodation so furnished, she suffered great physical pain and mental distress.     That all during the night the apartment was being entered by the porter and other trainmen.     That persons were permitted to congregate at the door of the apartment and use loud, vulgar, and profane language, which greatly disturbed and humiliated her.     That several passengers were permitted to enter the apartment during the night, but seeing a lady, they retired.     That no effort was made on the part of the appellant's employes to prevent these intrusions and unseemly noise and language.     That as a result of all this her rest was so disturbed and she was so shocked and humiliated, and endured so much physical pain, that it was some time after she reached Galveston before she was sufficiently recovered to undergo the operation; for all of which they asked damages.

Appellants answered, after exception, by general denial, by sworn plea of non est factum denying that it or any person authorized so to do had made the alleged contract to reserve the berth, and that the only contract made with appellees was the one whereby they were furnished a berth in the waiting-room, which they took with notice of the facts, and that all the lower berths were then occupied.

The evidence supports the allegations of failure to reserve a lower berth, and shows that appellees were compelled to accept accommodations offered them in the smoking-room.     That this was greatly inferior in comfort and privacy to a regular lower berth.     That it was not designed for the accommodation of passengers, but was, when occupied at all as a sleeping apartment, occupied by the porter of the car.     That the privacy of appellees was intruded upon many times during the night, both by the porter and other persons.     That appellee Mrs. Nelson was so sick she had to be carried on and off the train in her husband's arms.     That as a result of the poor accommodations and the intrusions and profane and vulgar language uttered in her hearing at the door of her apartment by other passengers, she was kept awake all night, and she endured great physical pain and mental distress and humiliation during the entire night.     That appellees had first-class railway tickets, and being refused the privilege of getting off the train, accepted the inferior accommodation offered and paid appellant $2 therefor, she lying on the bed prepared therein for her, and her husband sitting by her on a seat.     That appellant was negligent in permitting the intrusion upon the privacy of appellees by the porter and others, and negligent in permitting them to

be disturbed by the loud, profane, and obscene language uttered at the door, no effort being made by appellant to prevent it. That the necessity for accepting the inferior accommodations was the proximate result of their failure to secure a lower berth. And these facts are found in substance by the trial court.

The court also found that W. L. Stout was shown to have been the agent of appellant in the making of the contract whereby the lower berth is alleged to have been reserved, and that such agent was apprised of the condition of Mrs. Nelson and the necessity that appellees should know in advance whether the lower berth could be reserved for them. This latter finding is vigorously assailed both on the ground that it has no support in the evidence and that the evidence admitted in support of it should have been excluded. Appellant's assignments of error from fourth to eleventh inclusive are addressed, in one way or another, to this question, and inasmuch as the establishment of the alleged agency and contract lies at the very foundation of appellees' cause of action in one respect, we will dispose of it first.

The facts affecting this phase of the case are as follows, as frankly and fairly set out in appellant's brief: Plaintiffs' witness Baldwin stated that one Stinson was the regular agent of the railway company at Nacogdoches, but on September 16, 1898, he, Baldwin, was acting agent. That he, being requested by appellee A. A. Nelson to have a berth reserved for him and his wife on appellant's sleeping car, wired W. L. Stout, the union ticket agent at Shreveport, making the request, and stating that it was for a sick lady, and that a reply was necessary. A reply by wire was promptly received, signed "Stout," stating in effect that lower berth number 9 had been reserved on the train designated. Appellees were advised of the result of the request. Witness Branch stated that he was personally acquainted with W. L. Stout. That he was union railway ticket agent at Shreveport, La., in September, 1898, and that about that time witness had seen Stout frequently sell to passengers sleeping car tickets of appellant, and had seen the tickets so sold honored by the appellant's agents in charge of the cars on the railway through Nacogdoches, and that Shreveport was ninety miles from Nacogdoches. Witness Garrison stated that he had frequently procured the reservation of a berth on appellant's cars by having the Nacogdoches railway agent wire to Shreveport for the purpose, and that the reservation would be honored by the agents in charge of the sleeping car upon advice of the Nacogdoches agent as to his identity.

Stinson, the regular Nacogdoches agent, stated that appellant had no agent at Nacogdoches and sold no tickets there, and the usual way to procure the reservation of a berth was to wire to Shreveport, as was done in this instance, and that the request was always honored.

None of these witnesses except Branch was personally acquainted with Stout, and none of them knew what, if any, contract of agency Stout had with appellant company. The telegrams and reply signed "Stout" were adduced in evidence, Baldwin identifying them. The original reply sup-

posed to have been sent by Stout was not offered, but his message as taken down when received was.

The appellant's objection that none of this proof was admissible, as against the plea of non est factum, we do not think tenable. Appellant would scarcely be expected to disclose to the public the nature of its agreements with its agents, and such agency may be established by circumstances. These circumstances were admissible as tending to establish the very fact denied by the sworn plea. The evidence of Branch, Garrison, Baldwin, and Stinson, taken in connection with the confessed intimate business relation between appellant and the railway companies over whose line their cars were run, was ample basis for the introduction of the telegrams. The order of their introduction was not objected to, and would in any event be immaterial, the trial being before the court without a jury.

In Hill v. Railway, 2 Southwestern Reporter, 831, it was held that inasmuch as carriers necessarily transact their business through agents, such agents may bind them in such contracts as the public have a right to suppose they are authorized to make from the manner in which they are seemingly intrusted by their principals, and that this rule is necessary for the protection of those having business dealings with them. See authorities there cited.

In Railway v. Simons, 25 Southwestern Reporter, 996, agency was held to be properly established by circumstances attending the acts of the alleged agent and the action of the principal with reference thereto, though in that case one witness testified directly as to the existence of the agency. The general rule is that agency can not be established by the acts and declarations of the agent, nor can the extent of authority be thus shown, but this rule is believed to be modified with reference to concerns which can transact business only through agents. And where agency is once shown to exist, it is presumed, in the absence of proof to the contrary, to be general and not special. See authorities cited in Railway v. Simons, supra.

Though agency itself may not be established by the acts of the agent, yet these acts are admissible in connection with proof tending to show that the principal knew of and assented to them, or proof that they were of such a character as justified the inference that the principal must have known and assented and would not have permitted the same if unauthorized.

In the case under consideration it is shown that the appellant's agents in charge of the sleeping car recognized the acts of Stout, and recognized the reservation of berths procured in the usual way at Nacogdoches. When the proof tends to establish a fact, and at the same time discloses that it is within the power and to the interest of the opposing party to disprove it if false, the silence of the opposing party not only strengthens the probative force of the affirmative proof, but of itself is clothed with a certain probative force. Here, if Stout was not the agent of appellant, and did not make the alleged contract, it was clearly within the power

and greatly to the interest of appellant to disprove it, but not even the party signing the sworn plea was called to deny it. The sworn plea was not in itself evidence, but simply placed the burden of proof upon appellees. Robertson v. Du Bose, 76 Texas, 1.

A like reply disposes of the objection that the reply message was not signed or sent by Stout. The circumstances of its receipt authorized the inference, in the absence of opposing proof, that it was sent by him. There was no opposing proof.

We are of opinion that all this evidence was admissible and sufficient to establish the alleged contract.

The assignments complaining of the refusal of the trial court to sustain exception to the parts of the petition asking damages alleged to accrue before entering the sleeper can not be sustained, for the reason that, if error, it was harmless, as no proof was offered on the issue, and the court did not take those allegations into consideration in arriving at a judgment. His ruling as to other exceptions was correct. Railway v. Booth, 28 S. W. Rep., 719.

It is also objected that the court failed to find that the alleged contract had been made. In the very full findings of fact the court in some respects found the evidence of the fact, rather than the fact established, but that the contract was made in such a way as to bind appellant is by no means a strained construction of the court's finding. This and all the other findings are supported by the evidence and are ample to authorize the judgment. The finding with reference to the room and bedding being used by the negro porter was supported by the testimony quoted in appellant's brief, and the fact that the evidence is conflicting will not authorize this court to interfere. The finding in effect supports the allegation that the room was not designed for passengers, but as a place for the trainmen.

This practically disposes of all the many assignments save those assailing the measure of damages as disclosed by the finding of the court and the amount of the judgment as excessive.

The court, in his conclusions of law, stated the measure of damages to be the bodily and mental pain, anxiety, humiliation, or discomforts suffered by Mattie L. Nelson from the time she was placed in the bed in the smoker until she reached Galveston, exclusive of the suffering ordinarily incident to her disease. The court had already found the facts and circumstances which produced this condition not ordinarily incident to her disease, and we do not think the finding susceptible of the strained construction placed on it by appellant, and which is contended would allow her damages for the ordinary discomforts of the trip, if made under the most favorable circumstances.

The findings of the trial judge, taken as a whole, indicate that he was controlled in estimating the damages by a proper view of the law. While the judgment is a large one, it will be remembered that Mrs. Nelson was shown to be grievously sick, and that even after she was compelled to accept the inferior accommodations the company negligently

permitted her situation to be aggravated during the whole night, and this with notice of her previous state of health and the absolute necessity for rest. The damages in this case do not arise alone out of the failure to reserve a berth. The court correctly held that a large part of the damage resulted from the wrongful acts and omissions of appellant's agents, entirely disconnected from the original breach of contract. In Railway v. Booth, cited above, a case in many respects like the one under consideration, a verdict for $1000 was sustained and writ of error denied by the Supreme Court.

We are of opinion that the judgment should be affirmed, and it is so ordered.

*Affirmed.*