SAN ANTONIO & A. P. RY. CO. v. WIL-
LIAMS et al.

(Court of Civil Appeals of Texas. San Antonio.
June 11, 1913. Rehearing Denied June 28,
1913.)

1. DEATH (§ 42*)—ACTIONS—PARTIES.
Act 1909 (Acts 31st Leg. [1st Called Sess.]
c. 10; Rev. Civ. St. 1911, arts. 6648–6652),
relating to liability for negligence to railroad
employés, and in case of the death of an em-
ployé giving an action to his personal repre-
sentative for the surviving widow, children, fa-
ther, and mother, etc., did not change the ex-
isting rule under Rev. Civ. St. 1911, arts. 4698
and 4699, giving an action for the benefit of the
surviving wife, children, parents, etc., to be
brought by all or any one or more of the par-
ties entitled thereto, that the plaintiff in such
suit might join the other statutory beneficiaries
for the determination of their rights, though
alleging that they had none, so that, in an ac-
tion by the widow and minor child for wrongful
death, the court might properly render judg-
ment against the parents of the deceased, al-
though they had no legal notice of being made
parties.
[Ed. Note.—For other cases, see Death, Cent.
Dig. § 58; Dec. Dig. § 42.*]

2. MASTER AND SERVANT (§ 281*)—ACTION FOR
INJURIES—EVIDENCE—ORDERS.
Evidence in an action for the death of a
railroad engineer alleging negligence of defend-
ant's conductor in ordering him to move his
train, causing a collision, held to show that the
engineer was justified in obeying the orders of
the conductor.
[Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 987–996; Dec. Dig. §
281.*]

3. MASTER AND SERVANT (§ 185*)—INJURIES
TO SERVANT — FELLOW SERVANTS — NEGLI-
GENCE—RAILROAD CONDUCTOR.
Where it was the duty of a railroad con-
ductor to read his orders, and then read them
to the other train employés, but he read only
the order given to the engineer which was dif-
ferent from the one given to him, he was neg-
ligent in ordering a movement according to the
order given to the engineer.
[Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 385–421; Dec. Dig. §
185.*]

4. EVIDENCE (§ 78*)—PRESUMPTION—FAILURE
TO PRODUCE EVIDENCE.
Where the evidence in an action for the
death of a railroad engineer tended to show
that an order was issued to him to pass another
train at a certain place, and defendant possess-
ed evidence which might have rebutted the pre-
sumption arising from the fact that it was
written as read, that both the conductor and
the engineer read the order in a certain way, de-
fendant's failure to produce such evidence would
strengthen the presumption.
[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 98, 100; Dec. Dig. § 78.*]

5. MASTER AND SERVANT (§ 227*)—INJURIES
TO SERVANT—CONTRIBUTORY NEGLIGENCE.
Where the death of an employé is solely
the result of his negligent act of commission,
his legal representative cannot recover damages
for his death.
[Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 668, 669; Dec. Dig. §
227.*]

6. DEATH (§ 99*)—DAMAGES—EXCESSIVE DAM-
AGES.
In an action for the death of a railroad
engineer in a collision resulting from the con-
ductor's negligence in ordering him to move his
train, where deceased was 32 years of age and
earning from $160 to $175 a month, a verdict
of $10,000 for the widow and $15,000 to a
daughter 9 years of age, in the absence of any
evidence of passion or prejudice, would not be
disturbed as excessive.
[Ed. Note.—For other cases, see Death, Cent.
Dig. §§ 125–130; Dec. Dig. § 99.*]

7. APPEAL AND ERROR (§ 877*)—PARTIES EN-
TITLED TO ALLEGE ERROR.
In an action by the widow and minor child
against a railroad for the death of the husband
and father, an engineer, the defendant could not
allege error in that plaintiffs had the authority
to sue without joining the father and mother of
deceased who were adjudged to have no right
of recovery, and that it was unnecessary to
join them, since no one could be injured by such
error but the parents, and such injury, if any,
did not concern the defendant.
[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 3560–3572; Dec. Dig. §
877.*]

Appeal from District Court, Lavaca Coun-
ty; M. Kennon, Judge.

Action by Annie Williams, Louise Wil-
liams, and others against the San Antonio
& Aransas Pass Railway Company. Judg-
ment for plaintiffs Annie and Louise Wil-
liams, and against the other plaintiffs and the
defendants, and defendant appeals. Af-
firmed.

Patton & Schwartz, of Hallettsville, for
appellant. R. B. Allen and Paulus & Rags-
dale, all of Hallettsville, for appellees.

FLY, C. J. This is a suit instituted by ap-
pellees, Annie Williams, the widow, and
Louise Williams, a minor daughter, of J. A.
••ed, in the employment of ap-
pellant as a locomotive engineer, who was
killed in a head-on collision between his en-
gine and another, brought about through the
negligence of appellant's conductor, who was
in charge of train 83, on which deceased was
the engineer, in ordering the latter to move
his train out of Tanglewood station and
proceed to Lexington, thus causing a colli-
sion between said train and train 82, just
before the former arrived at Lexington.
The cause was tried by jury, and resulted
in a verdict for $25,000 in favor of appellees,
$10,000 being apportioned to Annie Williams
and $15,000 to Louise Williams. After this
cause had gone to trial, appellees filed a trial
amendment in which it was alleged that
John Williams and Mary Williams, who re-
sided in the town of London, Dominion of
Canada, were the parents of J. A. Williams,
deceased, and asking that said parents be
made plaintiffs in the suit. It was further
alleged that J. A. Williams contributed noth-
ing to their support, but devoted all of his
earnings to appellees.

[1] The first assignment of error assails
the action of the court in rendering judg-
ment against the parents of the deceased
because they were not parties to the suit,
and had no legal notice of being made par-
ties. The assignment is overruled. Railway

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

v. Henry, 75 Tex. 220, 12 S. W. 828; Railway v. Taylor, 5 Tex. Civ. App. 668, 24 S. W. 975; Railway v. Renken, 15 Tex. Civ. App. 229, 38 S. W. 829; Taylor v. S. A. Gas Co., 93 S. W. 674. The law of 1909 (Acts 31st Leg. [1st Called Sess.] c. 10), relating to employés of railroad companies (articles 6648 to 6652, inclusive, Rev. Stats. 1911), has not changed the law embodied in articles 4698 and 4699, R. S. 1911, except to give the next of kin dependent on the dead employé a right of action.

The court charged the jury as follows: "If you believe from the evidence that on or about the 23d day of July, A. D. 1910, J. A. Williams was in the employ of the defendant as a locomotive engineer operating an engine drawing a freight train of the defendant, known as train No. 83, and you also believe from the evidence that the engine which the said J. A. Williams was operating collided with another engine drawing another freight train of the defendant, known as train No. 82, going in an opposite direction near the station of Lexington, and that as a result of said collision said J. A. Williams sustained injuries from the effects of which he died on said date, and if you also believe from the evidence that A. T. Moffett was on said date an employé of defendant as conductor of said train No. 83, and if you also believe from the evidence that said Moffett as such conductor of said train No. 83 received an order from the defendant which required him to hold said train No. 83 at the station of Tanglewood until 10:25 a. m. on said date to await the arrival there of said train No. 82, and that said Moffett, in disregard of said order, directed said J. A. Williams to leave said station of Tanglewood before 10:25 a. m. on said date, and you also believe from the evidence that it was the duty of said J. A. Williams to obey the instructions of said Moffett to leave Tanglewood, and that said J. A. Williams did obey said direction of said Moffett and left Tanglewood before 10:25 a. m. on said date, if you believe from the evidence that said Moffett did so direct said Williams to leave Tanglewood, and you also believe from the evidence that said Moffett was negligent in so directing said Williams to leave said station of Tanglewood before 10:25 a. m. on said date, if you find that said Moffett did so direct said Williams to leave said station, and that this negligence, if any, of said Moffett, was the direct and proximate cause of the death of the said J. A. Williams, and you also believe from the evidence that the plaintiff Annie Williams was the wife, and the plaintiff Louise Williams the daughter, of said J. A. Williams, and have each sustained pecuniary loss by reason of the death of the said J. A. Williams, then I charge you that your verdict must be for said plaintiffs."

[2] That charge is assailed through the second and third assignments of error, as formulated into one proposition thereunder, on the ground that it submitted an issue to the jury as to whether or not it was the duty of the deceased engineer to obey the order of the conductor to move the train, when the uncontroverted evidence showed that the train order was superior to the order of the conductor. When train 83, on which deceased was the engineer, reached Tanglewood, a station on the line of appellant, and had remained there 15 minutes, the engineer was ordered by the conductor to proceed to Lexington, a station south of Tanglewood, and he obeyed the order; and just before he reached Lexington he collided with another freight train, No. 82, going north, and was killed. It seems that at Rockdale, a station north of Tanglewood, the conductor and engineer each received an order. If the conductor ever read his, the evidence fails to disclose it. The engineer read his aloud in the hearing of the conductor, as follows: "No. 51, engine 40, will wait at Lexington until 10:05 a. m. for No. 82, engine 159. No. 82, engine 159, will wait at Lexington until 10:25 a. m. for No. 83, engine 119." Train 83 was the one being run by the deceased engineer, and train 82 the one with which he collided. The conductor read the order received by the engineer at the same time he was reading it, and did not detect that it was read incorrectly. He stated: "He had a copy just like I had a copy, and I knew it because he read it to me, and I was looking over his shoulder at the time he read it." The conductor told Overly, a brakeman, that his train was to proceed to Tanglewood and back in for No. 51, and would proceed to Lexington for 82. "I told him they would wait there for us until 10:25." The conductor stated that his order was the same as that of the engineer, and yet it does not appear that he ever read his order, and, when questioned on the subject, it was clear that his statement that the two orders were the same was because both were carbon copies. On being pressed on the subject, he said: "I mean when I state that, that this is the usual course, I mean carbon copies, that that is the usual way of doing it; I don't know about this particular one." He could well state that he did not know about this order, because in that one order was included orders to three different conductors and three different engineers, six in number, and, though it was within the power of appellant alone to show it, no effort was made to prove that all six copies were made at once from the same original. Appellant introduced no evidence whatever as to the contents of the order issued to the six men, except what it gathered from the conductor who is not shown to have ever read the order obtained by him. The circumstances tend to show that he did not read his copy of the order, but only read the copy given to the engineer. From that order he and the engineer obtained the con-

viction that their train was to meet No. 82 at Lexington, and the jury could well find that the order given to the engineer read to that effect. It would be a singular coincidence that both the conductor and engineer should read the order as ordering them to go to Lexington to meet No. 82, when it was to meet that train at Tanglewood. What became of the order to the conductor or the one to the engineer does not appear, and while we may infer that a certain order was presented to Moffett, the conductor, while he was testifying, where it came from or by whom it was signed and issued was not shown. If any of the orders were signed by the assistant superintendent of transportation, whose orders, according to rule 492, should be obeyed by enginemen, the evidence failed to indicate it.

Under the facts indicated, the jury could well find that the order given to the engineer of train No. 83 required him to meet train No. 82 at Lexington, and under those circumstances, in compliance with appellant's rules, the engineer could only move the train under the orders of the conductor while at Tanglewood, and it was his duty to obey those orders. There was ample evidence to raise the issue as to whether the engineer was not justified in moving the train under the orders of the conductor, and the second and third assignments are overruled.

[3] If the order given the conductor was, as stated by him, like one that was shown him, it was different from the one given the engineer, and the conductor was guilty of negligence in ordering the train to leave Tanglewood. It was his duty to read his orders, and then read them to other employés on the train. He seems to have read only the order given to the engineer, and he afterwards told a brakeman that it gave train 83 until 10:25 a. m. to get to Lexington, and the engineer told his fireman that he had until 10:25 to make Lexington. The engineer was justified in obeying the orders of the conductor.

The order introduced in evidence by appellant was not really addressed to train 83, but, in addition to mixing it with an order to train 51, it ordered train 82 to remain at Tanglewood until 10:25 a. m. for 83. The order was in direct violation of a rule of appellant which it introduced in evidence, and which provided that train orders should "contain neither information nor instruction not essential to such movements." The train order was confusing in this case because, as testified by Moffett, "there was not connection between the running time of train No. 51 referred to in the order and train No. 83." The order was not shown to have been "issued by authority and over the signature of the assistant superintendent of transportation," as required by appellant's rule, nor was it shown to have been signed by any one. Appellant gave no information as to the order, although it had information in its possession as to what was contained in the original orders given the three trains, and the train order introduced by it was in no manner identified or verified by it as the one received by the dead engineer. If only one order was written in the office of the assistant superintendent, and all the orders received by the different trains concerned were carbon copies of that order, it could have shown it. But it was silent, and did not choose to let in the light on the transaction.

[4] There was evidence that tended to show that an order was issued to the engineer of train 83, commanding him to pass train 82 at Lexington. Appellant had in its possession evidence which might have rebutted the presumption, arising from the fact that both the conductor and engineer read the order in a certain way, that it was written as read by them, and a failure to produce such testimony would strengthen such presumption. Thompson v. Shannon, 9 Tex. 536; Bailey v. Hicks, 16 Tex. 222; Chandler v. Meckling, 22 Tex. 36; Pullman Car Co. v. Nelson, 22 Tex. Civ. App. 225, 54 S. W. 624; Fant v. Sullivan, 152 S. W. 515.

[5] The fifth and seventh assignments of error are followed by one proposition which is to the effect that, where the death of an employé "is solely the result of his negligent act of commission," his legal representatives cannot recover damages for his death. That is a correct proposition of law, but it is not sustained by the evidence, which showed that the death of J. A. Williams was caused by the negligence of appellant, as indicated by our conclusions of fact herein set forth.

[6] The sixth and eighth assignments assail the verdict on the ground of its excessiveness. If the wife had sued alone and had obtained a verdict for $10,000, it would not have been considered excessive, nor if the little girl, nine years of age, had sued alone and recovered $15,000, would that be considered excessive for the death of a man, her father, 32 years of age, and earning from $160 to $175 a month. The verdict may appear large in the aggregate, but, considered in the light of all the evidence, this court fails to discover any evidence of passion or prejudice on the part of the jury, and it will not be disturbed.

[7] In the argument with which the brief is closed, it is the contention of appellant that appellees had the authority to sue without joining the father and mother of the deceased as parties, and that it was unnecessary, if not erroneous, to join them in the suit. Reasoning from appellant's premises, no one could be injured but the parents, and we fail to comprehend its concern about that matter. It does not contend that it was injured by the joinder, and it has no right to be presenting what it may deem errors for parties with which it has no connection.

The court presented the issue of compara-

tive negligence, as defined by the law of 1909, and no complaint is made of that charge. The jury evidently concluded that J. A. Williams was not guilty of any negligence contributing to his death, and there is evidence to justify that finding.

The judgment is affirmed.