## SECURITY MOTOR CO. v. CHESTNUT. *
### (No. 8695.)

(Court of Civil Appeals of Texas. Dallas. July 1, 1922. Rehearing Denied Oct. 14, 1922.)

1. **Sales ⟐52(5)—Findings as to terms of contract supported by evidence.**

Findings that a contract for the sale of automobiles was made and stating its terms *held* supported by the evidence.

2. **Appeal and error ⟐1001(1)—Jury's finding tested by prima facie strength of evidence.**

The correctness of the jury's finding is to be tested by the prima facie strength of the evidence.

3. **Sales ⟐417—Proof of market value of automobiles held to support finding.**

In an action for breach of a contract to sell automobiles, proof of the market value of the automobiles *held* to support the jury's finding.

4. **Evidence ⟐543(4)—Dealer in personalty expert as to its market value.**

A dealer in personal property in a particular place is an expert witness as to its market value there.

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction December 6, 1922.

**5. Evidence ⬤⟳323(4) — Witness may derive part of information on market value from manufacturers' price list.**

A witness giving testimony on the market value of a chattel may derive part of his information from the price list prepared and used by the manufacturers in the ordinary conduct of their business.

**6. Contracts ⬤⟳164—First contract held immaterial after making of second contract.**

Where the first contract under which parties transacted business contained a provision that any transaction after its termination should, under no circumstances, be construed as a renewal, transactions after the termination of this contract and the making of a second contract were not affected by the terms of the first contract.

**7. Contracts ⬤⟳215(1)—Contract not extended by acts and declarations indicating intent to extend.**

The fact that the parties by their acts and declarations indicated an intent to treat a written contract as continuing after the time prescribed for its termination does not have the effect of continuing the contract.

**8. Appeal and error ⬤⟳692(1)—Exclusion of answers to questions not considered where expected answers not shown.**

The exclusion of answers to questions will not be considered where the bill of exceptions does not contain the expected answers.

### On Motion for Rehearing.

**9. Sales ⬤⟳415—Buyer suing for failure to deliver has burden of proving market value.**

A buyer suing for failure to deliver automobiles has the burden of proving their market value.

**10. Evidence ⬤⟳265(18)— Failure to dispute buyer's testimony of market value has probative force.**

The fact that seller remained silent and failed to dispute buyer's statement of the market value of the automobiles in question has probative force.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by S. D. Chestnut against the Security Motor Company. Judgment for plaintiff, and defendant appeals. Affirmed.

George T. Burgess, of Dallas, for appellant. Spence, Haven & Smithdeal, of Dallas, for appellee.

HAMILTON, J. Appellee sued appellant for recovery of damages for the breach of a contract alleged to have been made between the parties for the sale and delivery to appellee by appellant of eighteen automobiles. Appellant was the distributing agent in Texas of the Cole Motor Car Company, an Indiana corporation. Previously Frawley Motor Car Company had been distributor for

the Cole Motor Car Company, but it had been succeeded by Security Motor Company. A written contract between appellee, a dealer, and the Frawley Motor Car Company had existed from July 16, 1918, until June 30, 1919. On October 15, 1919, a transaction was made between the parties to this suit, which is made the basis of the right of recovery. Appellee contends that this transaction constituted a contract by virtue of which appellant sold him eighteen Cole automobiles to be delivered in Fort Worth, Tex., his place of business as a dealer, the deliveries to be made as follows: Three on January 1, 1920; three on February 1, 1920; three on March 1, 1920; three on April 1, 1920; three on May 1, 1920; and three on June 1, 1920. It is alleged that appellant breached this contract and refused to make any shipments, after appellee had expended energy and money preparing equipment and advertising, etc.

The difference between the contract price of the automobiles on the respective dates of delivery agreed upon and the market value of them in Fort Worth on those dates was alleged to be $13,537.50.

The case was tried before the court and a jury and resulted in a recovery of $13,425. Three issues were presented to the jury and were all answered favorable to appellee. They were as follows:

"On the 15th day of October, 1919, did the plaintiff, S. D. Chestnut, agree to purchase, and did the defendant, Security Motor Company, agree to sell, eighteen Cole automobiles to be shipped as follows: Three January 1, 1920; three February 1, 1920; three March 1, 1920; three April 1, 1920; three May 1, 1920; three June 1, 1920. Answer: Yes.

"Do you find from the evidence that on the 15th day of October, 1919, the plaintiff, S. D. Chestnut, agreed to pay, and the defendant, Security Motor Company, agreed to accept, for said eighteen automobiles the list price of said automobiles as the same was to be established by the manufacturer, the Cole Motor Car Company of Indianapolis, Ind., on the dates of the respective shipments of said automobiles, less 25 per cent.? Answer: Yes.

"What was the difference between the contract price of said automobiles and the reasonable cash market value of said automobiles, if any, in Fort Worth and Tarrant county, Tex., on the dates of the respective shipments? Answer: $13,425."

This appeal complains of the insufficiency of the evidence to support these findings and of the court's action in excluding certain other evidence. No other questions being presented, our discussion will be confined to these.

[1] Appellee testified positively that on October 15, 1919, he made an agreement with appellant's manager by which he bought eighteen automobiles to be delivered, three on the 1st day of January, 1920, and three

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

on the 1st day of each succeeding month to and including June 1, 1920, for which he was to pay, on the respective delivery dates, "the list price less 25 per cent. of the list price." He testified that the understanding applied to extras, etc., comprehended in it. The list price had not yet been issued by the factory, and accordingly it was not known to the parties. Appellee testified that to it the freight and war tax were to be added after the 25 per cent. deduction had been made. This agreement, he testified, was oral, and in connection with it six written documents were executed by him. These documents were placed in evidence. They appear to be written orders. They each call for shipments of three automobiles, parts and extras, to appellee in Fort Worth. They specify the route of shipment, terms of payment, and serially call for shipments on January 1, February 1, March 1, April 1, May 1, and June 1, 1920.

[2] This evidence sustains the first finding to the effect that the contract was made, and the second finding to the effect that its terms were as appellee contended they were. It is in conflict with evidence introduced by appellant to combat it, but the finding of the jury renders it as effectual in our consideration on this appeal as if it came to us without any contradiction in the record, since its prima facie strength alone is to be tested in passing upon the jury's finding.

[3] Appellant contends that the proof of market value is utterly inadequate because, although appellee and his witness Epstein, a dealer in Cole automobiles in Fort Worth, both testified in terms more or less positive what the market price in Fort Worth was, yet on cross-examination they merely testified to the selling price and the price fixed by the manufacturer at which the cars were to be sold, whereas the market value is determined by what an article will bring in the open market.

Epstein testified that he was engaged in the business of selling Cole and Stephens automobiles in Fort Worth during 1920. He testified that he was familiar with the market price of Cole cars in Fort Worth in January, February, March, April, May, and June, 1920. He gave the market price of such automobiles in Fort Worth during those months. He stated that he could give accurately only the price he asked for them; that sometimes he got that price and sometimes he did not. He gave the list selling price as the market value.

Appellee testified as follows:

"I was ready, willing, and able to take those cars had they been shipped during those specified times. After those documents were executed, and on the strength of the conversation which I had with Mr. Chapman, at the time I mention, the list price of those cars was fixed by the Cole Motor Company at Indianapolis, Ind. The list price of model car No. 872, in January, 1920, was $2,850 f. o. b. fac-

tory. That is the factory price at the factory where they are manufactured. It doesn't mean the price here. The price here would be $2,-850 plus the war tax added and the freight. The price here would be that price plus the war tax and the freight added to that. The list price of car No. 871 in January, 1920, was the same price, $2,850. The price of car No. 870, the list price in January, 1920, was the same. For February, 1920, the price list of car No. 872 was $2,850. The list price of car No. 870 during the month of February, 1920, was $2,850. In March the list price of 872 and 871 in the year of 1920 was $2,850. In April of the year 1920 the list price of 872 and 870 was $3,050 f. o. b. factory. In May of the same year, May 1st, the list price of 872 and 871 was the same price, $3,050. And in June of the same year the list price of 870, 871, and 872 was $3,250 for each one. I was to pay the list price less 25 per cent. I continued my automobile business in Fort Worth along in January, February, March, April, May, and June, 1920. The cash market value in Fort Worth, Tarrant county, of models 872, 871, and 870 January 1, 1920, was $2,850 plus war tax and freight. The charge was $235 for war tax and freight on each car —$235 and the freight. That would make a total of $3,085. That is what I mean as the cash market value of those cars in Tarrant county, Fort Worth, at that time—that is, January 1 and during January, 1920.

"The cash market value of car models 872, 871, and 870 in Fort Worth, in Tarrant county, Tex., Cole cars, February 1 and for the month of February in the year 1920 was the same price, the same as it was in January— $2,850 plus the war tax and the freight, which would be $3,085.

"The cash market value of models 872, 871, and 870 Cole cars in Fort Worth and in Tarrant county, Tex., on March 1, 1920, and during the month of March, 1920, was $3,085. The cash market value of model 870 and 872 in Fort Worth and in Tarrant county, Tex., on April 1, 1920, and during the month of April, 1920, would be $3,285; it would be a little more than that—5 per cent. war tax on that additional, raise it $200; 5 per cent. of $200 would make it $3,285 plus $10, or $3,295.

"The cash market value of models 872 and 871 of Cole cars in Fort Worth, in Tarrant county, Tex., on May 1, 1920, and during May, 1920, would be $3,295. The cash market value of models 870, 871, and 872 of Cole cars in Tarrant county and in Fort Worth June 1, 1920, and during the month of June, 1920, was $3,500.

"I have had occasion to make an addition of the contract prices of those cars and the cash market prices or values of them and subtract the two to get the difference, and it is $13,-425, the total; it is $13,425, I should say."

Cross-examination:

"It is correct that the Security Motor Company had shipped me none of those cars. Mr. Chapman charged that $235 for freight; that was on the list price I regarded it; that was in November, I think. I do not know exactly what the freight would be; Mr. Chapman charged me that price for the freight and the

war tax; not in January. I don't know what it was exactly. I don't know what it was in February exactly; I don't know what it was in March nor in April exactly. I could figure it in May or June. If he had charged me $400 as freight, I wouldn't have paid it. I arrive at the prices given or the values given from what I had been paying from Indiana. I didn't order any in January, and don't know what the freight rate was in January from Indianapolis. In passing on market values, I was simply getting the list price from the Cole people plus the freight and the war tax. I know what the cars were worth in cash on the market in the city of Fort Worth at that time, $2,850 plus the war tax and the freight. I wouldn't have sold for any less; I am not positive of that. I sold one car in January; it was a new car; I didn't sell any in February, March, April, May, and June. I had gotten the car I sold in January before I sold it in the latter part of November, I think. I sold it for $3,100, I believe, for cash; half of it was cash, and the balance was in monthly payments."

[4] Both appellee and Epstein were in the position of dealers at Fort Worth in the community about which they offered evidence. It is recognized by the authorities that a dealer in personal property in a particular place is generally to be accepted as an expert witness as to its market value there. Railway Co. v. O'Connell (Tex. Civ. App.) 210 S. W. 757; Wells Fargo & Co. v. Long (Tex. Civ. App.) 190 S. W. 530; Jones on Evidence, vol. 2, pars. 386, 387.

[5] We think it safe to say that the ordinary business man would refer to the price list of an automobile factory indiscriminately issued to inform himself as to values and rely upon it, in connection with freight charges and taxes as indicating the market value in a particular place. The price list was prepared and used by the manufacturers in the ordinary conduct of their business. A witness may derive his knowledge of market value from such sources in connection with such other circumstances as entered into the qualifications of the witness in this case to testify upon this particular feature. The effect of such evidence was for the jury to express. Chamberlayne's Modern Law of Evidence, vol. 3, par. 2099; Cliquot v. U. S., 3 Wall. 114, 18 L. Ed. 120.

Appellant, being the distributor for Texas, was in a position to know the market value of Cole automobiles. Through it alone, it seems, all dealers were supplied. It was both within its power and to its interest to possess accurate information as to the market value of Cole automobiles in Fort Worth and wherever else in Texas they were sold. Appellee swore that the difference between the agreed sale price to him and the market price in Fort Worth was precisely what the jury found it to be. Appellant's manager and a salesman for it were witnesses in the case. Neither of them disputed appellee's statement, but remained silent on this point.

Such silence has been held not only to give added strength to the probative force of affirmative admissible statements in behalf of the adverse party as to value, but of itself to be "clothed with a certain probative force." Pullman Car Co. v. Nelson, 22 Tex. Civ. App. 223, 54 S. W. 624; Sullivan v. Fant (Tex. Civ. App.) 160 S. W. 612.

[6] Appellant contends that the court erred in excluding evidence relating to the written contract which formerly existed between appellee and Frawley, which by its own terms expired on June 30, 1919, and also contends that the court ought to have submitted to the jury, as requested, a special issue as to whether the writings dated October 15, 1919, were orders for automobiles or mere specifications of the kind and number appellee expected to use during the first six months of 1920. These matters are not submitted in compliance with the rules of briefing prescribed. They embody subjects included in different bills of exceptions referred to by number, and it seems from the discussion following them that they all relate to distinct points of procedure arising on different questions involved in the evidence. Their presentation is incoherent and is characterized by a lack of clearness. This is in violation of rule 30 of this court (142 S. W. xiii), which requires that the propositions upon which the appeal is predicated shall be stated consecutively, separately subdivided and numbered, etc.

These points are embodied in seven bills of exceptions. The first assails the action of the court in sustaining an objection to a question asked appellee as to whether certain automobiles bought and paid for by him prior to the date of the contract sued upon were not bought under the written agreement between him and the Frawley Motor Company, which agreement, as we have already said, expired June 30, 1919.

We do not think appellant was prejudiced by the ruling of the court. Granted that transactions had been had between appellant and appellee on the basis of and with reference to the Frawley written contract before the transaction of October 15, 1919; such facts could not serve to establish that the latter contract, because of such a general course of previous dealing, came under it. Our reasons for this view are these: Section 15 of the Frawley contract is as follows:

"If for any cause whatever this agreement is terminated, any transaction thereafter between the distributor and dealer pertaining to the sale of cars or otherwise, whether it be in contemplation of the terms hereof or not, shall in no wise and under no circumstances be held or construed as being a renewal of this agreement."

[7] The contract had already expired by its own terms, and no stronger expression

than that above quoted from it could have been inserted to indicate that future transactions should not be governed by its provisions after its termination. Appellant's object in undertaking to establish that the parties were still operating under and with sole reference to its provisions was to obtain 'in this case the benefit of a clause of it providing for cancellation and termination by the mere giving of notice to the other party. Appellant had notified appellee by mail on December 30, 1919, that no shipment would be made to him on January 1, 1920, or on any of the other dates, and declared the arrangement between the parties at an end. The fact that the parties to a contract containing such a clause as that above copied from the Frawley agreement by their acts and declarations indicate an intention to treat the written contract as continuing after the time prescribed in it for its termination does not have the effect to continue the contract. Corpus Juris, vol. 13, p. 626; Hopedale Mach. Co. v. Entwistle, 133 Mass. 443.

[8] Error is asserted in this same connection on the ground that the court sustained appellee's objection to various questions propounded by appellant The bills of exceptions numbered 2, 4, 5, and 6, reserved at the time the rulings complained of were made, do not reveal what the answers to the respective questions would have been. The bills are accordingly fatally defective, and for this reason these features of the assignment will not be considered.

The judgment is affirmed.

### On Motion for Rehearing.

The motion for a rehearing insistently complains of that portion of the original opinion in which substantially it is declared that appellant was the distributor for Texas. The statement is challenged with the assertion that the record does not support it. The proof does not sustain the conclusion that appellant was distributor for the entire state, and the language of the opinion in respect to this is misleading for the reason that it leads to the conclusion that the proof shows appellant to be distributor for the whole state. However, the inaccuracy of statement pointed out is immaterial for the reason that it inheres in language intended to disclose that appellant was in a position to know, and that it was to its interest to know, the market value of Cole automobiles in Fort Worth; and the proof does support the conclusion that appellant was a distributor for the portion of Texas wherein and as to which the parties were dealing with each other. This being so, the opinion of the court is not to be affected by modifying the language used so as to state that, while the proof does not comprehend the expansive territory ascribed to appellant as a distributor, yet it does reveal that appellant was a distributor which operated in Fort Worth, and for that reason was in a position to know the market value of the articles it supplied at that point.

[9, 10] Appellant construes the opinion to the effect that it relieves appellee, the plaintiff below, of the requirement to prove his allegation of market value and imposes it upon appellant. Of course, the duty to prove market value rested upon appellee, and the opinion does not declare otherwise in stating that appellant's silence and failure to dispute appellee's statement of what the market value was strengthened the probative force of appellee's statements.

The motion for a rehearing is overruled.