MOREMAN et ux. v. ARMOUR & CO. et al.

No. 4094.

Court of Civil Appeals of Texas. Amarillo.
Nov. 8, 1933.

Rehearing Denied Dec. 6, 1933.

Lockhart & Brown, of Lubbock, for appellants.

Underwood, Johnson, Dooley & Huff, of Amarillo, and Bean & Klett and Bledsoe, Crenshaw & Dupree, all of Lubbock, for appellees.

HALL, Chief Justice.

J. M. Moreman and wife sued Armour & Co., a corporation, and the members of three partnerships known as Davis & Humphries, South Plains Transfer & Storage Company, and the Lubbock Hardware & Supply Company, to recover damages on account of the death of plaintiffs' son, who it is alleged was killed by W. Nelson Guthrie, a night watchman and special officer in the employment of the defendants.

The salient facts are that on the night of November 11, 1932, a number of young people living in the vicinity of Abernathy, in Hale county, came to Lubbock in an automobile driven by Colver Moreman, the seventeen-year old son of the plaintiffs below, appellants here. After arriving in Lubbock, the occupants of the car disagreed as to whether they should attend a dance or a picture show, and while driving around town in an effort to settle the dispute, the car was driven by Colver Moreman into an alley near the warehouse of Davis & Humphries. Members of the party left the car for a few minutes and upon their return the car was backed out of the alley and started forward on Ninth street. About the time the car commenced to back out of the alley, Guthrie appeared at the opposite end of the alley and, seeing the car, thought that the occupants of the car had been depredating, or were about to depredate, upon the property of one of his employers, Davis & Humphries.. He ran toward the car, shouting, as he says, to the occupants to stop. Upon their failure to do so, he drew his pistol, according to his account, and fired as a warning to the occupants of the car to stop them in order that he might investigate and learn their purpose in being in the alley. The bullet struck the Moreman boy in the left temple and resulted in his death a few hours thereafter.

With reference to Davis & Humphries' employment of Guthrie, the plaintiffs alleged: "That on or about the 5th day of November, A. D., 1932, the defendants J. M. Davis and W. E. Humphries, doing business as Davis & Humphries, and acting by and through W. E. Humphries, one of said partners, for the benefit of the partnership business, and also acting by and through one Olen Stewart, the manager and duly authorized agent of the said Davis & Humphries, in the conduct of their partnership business, who was acting in the scope of his authority as such, and for the benefit of the partnership business, employed the said W. Nelson Guthrie in the capacity

of night watchman and special officer, which employment continued up to and including the night of November 11, 1932, and that the said W. Nelson Guthrie, at the time he fired the shot that resulted in the death of Colver Moreman, as hereinafter set out, was acting in the scope of his employment by the said J. M. Davis and W. E. Humphries, doing business as Davis & Humphries, and as an employee and agent of said defendants, and for their benefit, and in the capacity for which he was employed by them."

The plaintiffs made similar allegations with reference to the employment of Guthrie by the other defendants, and further alleged that Guthrie was employed by all of the defendants jointly and severally to act as night watchman and special officer on the premises of said several defendants; that said defendants and their agents knew of the fact that Guthrie was so employed by the other defendants; that as such watchman and special officer it was the duty of Guthrie to watch the premises of the defendants, which were all within the corporate limits of the city of Lubbock, and to arrest and detain marauders who might be depredating upon the property of either of the defendants and to prevent persons from depredating thereon. That the said Guthrie in the performance of his duties as such night watchman on the premises of either of the defendants, or in going from the premises of one to the premises of another, was acting within the scope of his employment and as the employee and agent of each and all of the defendants. That each of the defendants paid and agreed to pay Guthrie a salary or wages for his services to them as such night watchman and special officer.

That on said night of November 11, 1932, at about 10 o'clock, the deceased, Colver Moreman, on a lawful mission and accompanied by a number of other young people, drove an automobile into and upon the public alley between Ninth and Tenth streets and between Avenues G and F in said city, then backed said car out of the alley into Ninth street, and started driving west. That said alley into which the car was driven and said Ninth street at said point was immediately adjacent to the warehouse of Davis & Humphries, which it was the duty of Guthrie to watch. That acting within the scope of his authority as an employee and agent of the defendants and each of them, Guthrie unlawfully, recklessly, negligently, and carelessly, and in gross and wanton disregard of the rights of the occupants of the car, drew a pistol and fired into the automobile which at that time was situated on Ninth street. That the bullet struck Colver Moreman, piercing his brain, from the effects of which he died about 2 o'clock on the morning of November 12th. That W. Nelson Guthrie is actually and notoriously insolvent, for which reason he is

not made a party to this suit. That Guthrie, at the time of his employment, was an unfit person to perform the duties of night watchman and special officer because he was negligent and careless, and of a nervous disposition, was easily excited, and prone to act upon impulse and without proper investigation and in disregard of human life, all of which facts were known to the defendants at the time they employed the said Guthrie, or could have been known by the exercise of ordinary prudence.

The defendants Armour & Co., Lubbock Hardware & Supply Company, and South Plains Transfer & Storage Company filed separate answers, each alleging that their employment of Guthrie was not a joint hiring; that each employed him to protect the property of the several defendants separately. That he was not acting as a night watchman employed by them, but as a policeman of the city of Lubbock, and that the killing was not done in the course of his employment by the defendants, but in the course of his employment by Davis & Humphries and for the protection of the property of Davis & Humphries, and they further allege that Guthrie was an independent contractor.

Davis & Humphries answered by general demurrer, general denial, specially denied that they or any one by their authority ever employed Guthrie to do any kind of work for them, that he was never their employee, and, in fact, operated as an independent contractor. They further alleged that Colver Moreman was guilty of contributory negligence in going to the part of the town where he was found at the time of the killing. Each of the other defendants adopted the plea of contributory negligence set up by Davis & Humphries.

The case was tried to a jury, and after appellants had closed in the introduction of their testimony in chief, appellees moved the court for an instructed verdict, which motion was granted and judgment was entered accordingly.

Davis & Humphries moved the court for a peremptory instruction in their favor because, as set out in the motion: "Plaintiffs have wholly failed to make out any case or issue of liabilities as against the defendants, because the proof shows as a matter of law that W. Nelson Guthrie, if he performed any services whatever in which these defendants were interested, they were performed in the capacity of an independent contractor and because the testimony is wholly insufficient to show or raise the issue that in fact the said Guthrie was ever employed by defendants or by their authority and if there be any testimony sufficient to raise the issue of employment, so far as these defendants are concerned, that still the evidence shows as a matter of law that the act in question on which plaintiffs' suit is based, was not being

done in the course of Guthrie's duties and employment, but was outside the scope of any such employment as night watchman."

The remaining defendants moved the court for an instructed verdict in their favor upon the following grounds: That there is no evidence showing a joint employment of Guthrie, that the act upon which the suit is based was not committed upon the property of either of said defendants, but on the property of other and different persons at a distance of several blocks from the property of said defendants; that the testimony of Guthrie shows that in firing the shot, he was not acting in the guarding of any of these defendants' property and at no time had an idea that their property was in danger or had been interfered with in any way by the occupants of the automobile; that the testimony shows as to these defendants that Guthrie was an independent contractor.

■ The first proposition advanced by appellants is that since the court instructed a verdict for the defendants at the close of plaintiffs' evidence in chief, that for the purposes of this appeal all of plaintiffs' evidence must be considered as true and must be viewed in the light most favorable to plaintiffs' case.

This contention is sound and must be sustained. 3 Tex. Jur. 1018, § 722; 1049, § 741; Walser et al. v. Calley (Tex. Civ. App.) 50 S.W.(2d) 337; Jones v. Jones (Tex. Civ. App.) 41 S.W.(2d) 496.

As said in the case of Caruth v. Dallas Gas Co., 282 S. W. 334, 338: "When it moved for peremptory instructions at the close of appellant's evidence, appellee must be deemed to have admitted the truth of such evidence, and this evidence, as against such motion, must be given its greatest probative force. Every favorable inference fairly deducible from the evidence, and every favorable presumption fairly arising therefrom, must be considered as facts established in favor of appellant. Where this evidence is fairly susceptible of more than one construction, or where more than one inference may be reasonably drawn from it, the trial court, in passing upon such a motion, must take the view in each instance most favorable to appellant. When viewed from this standpoint, if there exists substantial evidence tending to prove a fact, or facts, necessary for appellant's recovery, it was the duty of the court to submit the case to the jury under proper instructions. This rule of law must govern this court in determining whether there was error in giving peremptory instructions in appellee's favor."

It follows that if from the evidence introduced by plaintiffs, giving it the probative force to which it is entitled under the rule just announced and resolving in favor of the appellants every favorable intendment fairly deducible therefrom, that it might have been found by the jury that Guthrie at the time of the killing was the servant and agent of the defendants and was acting within the scope of his employment by them, or that there was evidence sufficient to sustain such a holding by the jury, the court erred in directing the verdict.

It appears from the record that the city of Lubbock has what is called a "wholesale district," in which the warehouses of the various defendants and other corporations and firms doing a wholesale business in that city are located; that numerous burglaries had been committed in that district; and that a number of the wholesale firms had presented to the city authorities the following petition, dated July 29, 1932: "We, the undersigned, want additional night watchman services in the wholesale district of the City of Lubbock, Texas, and ask that Nelson Guthrie be given commission to work same."

This petition is signed by the defendants Lubbock Hardware & Supply Company, South Plains Transfer & Storage Company, and Armour & Co., together with two other petitioners not parties to this suit. Immediately after this petition was presented, Guthrie was appointed a special policeman of the city and commissioned as such, with the understanding that the city of Lubbock would not be bound to compensate him for his services as special officer, but that such compensation should be paid him by the wholesale dealers whose premises he guarded. After his appointment, he says he was employed August 3d by Yeager Motor Company at $2 per month, by the Espey Transportation Company at $2.50 per month, and by Weiss Motor Company at $2.50 per month; that he was employed August 4th by the South Plains Transfer & Storage Company at $5 per month, and on the same day by the Lubbock Hardware & Supply Company and by Armour & Company on September 1st at the same wages, and was employed by Davis & Humphries on the 5th day of November thereafter at $5 per month. That he worked for all of the defendants under said employment until November 11th, the day of the shooting.

"In many cases one fact may be presumed from proof of another fact, in the absence of opposing evidence, and juries may indulge all reasonable inferences from the facts revealed to them by the evidence, or which unbiased and rational minds can properly deduce from the facts adduced before them." 17 Tex. Jur. 244, § 55.

"Several presumptions of fact may be drawn from the same set of circumstances, and the rule against the piling of one presumption upon another does not forbid the legal inferences and presumptions which may arise from a fact established alone by circumstances." Id. 248, § 57; Reilly v. Buster (Tex. Civ. App.) 52 S.W.(2d) 521.

The wording of the petition itself is some evidence tending to show that the petitioners had previously agreed that an additional watchman was needed in the wholesale district where their warehouses were located, and that they had selected Guthrie to be their joint agent in performing the services of such watchman for them. The reasonable inference is that the sole purpose of the petitioners in having Guthrie commissioned as a special policeman was to clothe him with authority to carry arms and arrest parties whom he found loitering or depredating upon the property of any or all of his employers. Without the commission he could not have lawfully carried the pistol with which he killed young Moreman. In appointing Guthrie as a special officer, the city acted upon the request of the petitioners, and the jury might have found that the sole purpose of his appointment was to enable him to serve as policeman as well as night watchman for the petitioners jointly and severally in the wholesale district of the city. The evidence further tends to show that the status of Guthrie as the joint agent of the petitioners, with authority to bear arms, became fixed when he received his commission, and that such status was in no degree altered or modified by his agreements subsequently made with the three petitioners as to the amount of his compensation.

The contention of Davis & Humphries is that there is not a scintilla of evidence in the case that Olin Stewart, whom plaintiffs alleged was the manager of their business and duly authorized to employ Guthrie, was even their employee; and further that if the evidence was sufficient to raise the issue that Stewart was their employee, it is wholly insufficient to indicate that he had any authority to employ Guthrie.

Guthrie testified that he was employed by Davis & Humphries on the 5th of November and in response to a cross-interrogatory propounded to him by Davis & Humphries as follows: "Isn't it a fact that Davis & Humphries never did say anything to you about what your duties would be as night watchman?" he replied: "None other than just when they hired me. They hired me as night watchman to watch their place." In response to another cross-question inquiring if it was not a fact that he had no instructions from any one connected with Davis & Humphries as to what his duties would be, he answered: "Mr. Stewart told me that if I saw anything out of the ordinary about lights being out, to call him or some one connected with the company. He gave me three telephone numbers to call, Mr. Wright, Mr. Humphries and Mr. Stewart." In response to direct interrogatories inquiring whether he had had any conversations or negotiations with members of the firm of Davis & Humphries or their employees with reference to being employed, he replied: "Yes, I talked to Mr. Stewart and Mr. Humphries both. I talked to Mr. Stewart two or three times about it, while they were in the old location. And I talked to Mr. Humphries once during the month of August, but I was not employed at that time. I talked to them again about the first of November at the new location. The first time I talked to him was that they would take the night-watchman service at the new place. Then on or about the 4th or 5th of November I was employed. I asked him if he had all of his stuff moved out of the old place and he said he did not, and I told him that I would go ahead and watch it in connection with the other without any extra charge and he said 'alright.'" He was further asked: "Are you or not acquainted with the firm of Davis & Humphries in the city of Lubbock during the period from August 1, 1932, up to and including the night of November 11, 1932?" His reply was: "I know Mr. Humphries and Mr. Stewart." When asked whether said firm ever employed him in any capacity and who employed him and what he was to be paid and when his employment began and what instructions, if any, were given him with reference thereto, he said: "Yes, on or about the 5th of November Mr. Stewart employed me at $5.00 per month. I received no instructions. They asked me what I thought about keeping a light in the office and I told them I thought it would be a good thing to keep a light near the safe." In several places in his depositions he stated that he had been employed by Davis & Humphries and had talked with Mr. Stewart with reference to the matter.

We think this testimony is sufficient to authorize the jury to conclude that Guthrie was an employee of Davis & Humphries when considered with the further fact that no one testified with reference to the matter in behalf of Davis & Humphries denying that Stewart was connected with the firm and the statements made by Guthrie more than once that he had talked with Humphries and had been employed by the firm. Reilly v. Buster, supra; Mrs. Baird's Bakery v. Davis (Tex. Civ. App.) 54 S.W.(2d) 1031; Globe Laundry v. McLean (Tex. Civ. App.) 19 S.W.(2d) 94; Barron v. Texas Employers' Ins. Association (Tex. Com. App.) 36 S.W.(2d) 464; Pullman Co. v. Nelson, 22 Tex. Civ. App. 223, 54 S. W. 624.

It is said in 17 Tex. Jur. 305, § 86: "Where a party to an action fails to produce evidence which he could have produced and which it was his duty to produce, it will be presumed that if produced it would have been unfavorable to him and would have operated against him and every intendment will be in favor of the opposite party. Such an unfavorable presumption may arise, for example, from the failure of a party to pro-

duce testimony peculiarly within his knowledge or his failure to call witnesses who have knowledge of the facts, especially his own agents or servants." See, also, Id. 306, § 87, to the same effect.

It follows from what has been said that the court erred in instructing a verdict.

It will only be necessary for us to consider the further contention that the action of the court may be sustained upon the theory that Guthrie was an independent contractor.

Guthrie is the only witness who testified with reference to the relation he sustained to the defendants. He was simply a night watchman. In the performance of his duties he was not required to possess or exercise unusual skill or ability. If he stayed awake all night, kept sober, visited his employers' warehouses at reasonable intervals, and guarded them so as to prevent burglary and theft, he had earned his compensation. The relation of master and servant is prima facie established where it is shown that the alleged servant was performing labor for his employer at the time of the alleged misconduct and the presumption that the relation of master and servant exists when the proof shows that one is rendering ordinary services for another for wages. Texas & N. O. Ry. Co. v. Parsons (Tex. Civ. App.) 109 S. W. 240, 245; Id., 102 Tex. 157, 113 S. W. 914, 132 Am. St. Rep. 857; Patton-Worsham Drug Co. v. Drennon (Tex. Civ. App.) 123 S. W. 705; Prairie Oil & Gas Co. v. Wright (Tex. Civ. App.) 238 S. W. 974. There are no circumstances revealed by the testimony of Guthrie that would indicate that he was an independent contractor. He had no authority to employ help; he had no special skill or experience; it was not shown that he was a free agent as to his hours of work, but from his own testimony it appears that he was expected to work through the entire night and exclusively for his employers.

In actions for negligence of the defendant's employee, where the defendant pleads the defense of independent contractor, the burden of proof is upon him to show the existence of a contract making such employee an independent contractor. The reason the law places the burden upon him is because the facts relative to the relation are peculiarly within the defendant's knowledge. Prairie Oil & Gas Co. v. Wright, supra.

It is said that the most decisive test in determining the issue of independent contractor is whether the employer has the right of control of the person employed as to the details of the work. Shannon v. Western Indemnity Co. (Tex. Com. App.) 257 S. W. 522; King v. Galloway (Tex. Com. App.) 284 S. W. 942; National Cash Register Co. v. Rider (Tex. Com. App.) 24 S.W.(2d) 28; Southern Surety Co. v. Shoemake (Tex. Com. App.) 24 S.W.(2d) 7.

There are few, if any, details connected with the duties of a night watchman and very little, if any, instruction is required where the watchman is a man of ordinary intelligence. Even a shepherd dog makes a good night watchman. We may reasonably suppose that Guthrie's employers had the right to control his activities to the extent of requiring him to visit their respective warehouses a reasonable number of times each night, to be faithful and punctual in the performance of his duties, and, according to his testimony, they had the right to end his employment at their option. A "watchman" in a city is an officer, and Webster's definition is: "One who guards the streets of a city or building by night." Singleton v. Eureka County, 22 Nev. 91, 35 P. 833.

We express no opinion with reference to the issue of independent contractor further than to say that Guthrie was not shown to have been an independent contractor as a matter of law. Under the record before us it was an issue of fact to be determined by the jury.

In view of another trial it is not proper for us to discuss the weight and sufficiency of the evidence with reference to the issues considered, further than we have done.

If Guthrie was a servant jointly and severally employed by the defendants and he wrongfully killed young Moreman while in the performance of his duties, the appellees would be liable. 39 C. J. 1278; Western Union Telegraph Co. v. Rust, 55 Tex. Civ. App. 359, 120 S. W. 249; American Express Co. et al. v. Chandler (Tex. Civ. App.) 215 S. W. 364; Id. (Tex. Com. App.) 231 S. W. 1085; Terry et al. v. Burford, 131 Tenn. 451, 175 S. W. 538, L. R. A. 1915F, 714.

Because the court erred in instructing a verdict, the judgment is reversed and the cause remanded.