TEXAS CO. v. CHARLES CLARKE & CO.
(No. 6974.)

(Court of Civil Appeals of Texas. Galveston.
Nov. 4, 1915. Rehearing Denied
Dec. 16, 1915.)

1. MASTER AND SERVANT ⬡═330 — TORT OF
SERVANT — FACT OF EMPLOYMENT — SUFFI-
CIENCY OF EVIDENCE.

In the owner's suit for destruction of his
oil barge by fire, evidence *held* insufficient to
sustain a finding that one who carried a lan-
tern near the oil flowing from a hose into the
barge was in defendant's employ and in the
performance of his duties at the time.

[Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 1270–1272; Dec. Dig.
⬡═330.]

2. EVIDENCE ⬡═87—PRESUMPTION—FAILURE
TO PRODUCE PROOF.

The failure of a defendant to produce evi-
dence particularly within his knowledge raises a
presumption against him only when a plaintiff,
having the burden of proof on the point, has
produced evidence sufficient to raise an issue as
to the truth of his claim, because to hold other-
wise than that plaintiff's case cannot be sustain-
ed when it depends wholly upon the failure of
defendant, who is shown to be in possession of
the facts, to disprove such claim, would be to
abrogate the rule placing the burden upon a
plaintiff to make his case.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. § 109; Dec. Dig. ⬡═87.]

3. MASTER AND SERVANT ⬡═330 — TORT OF
SERVANT — NEGLIGENCE — SUFFICIENCY OF
EVIDENCE.

In a suit by the owner of an oil barge for
its destruction by fire while loading, evidence
*held* sufficient to support a finding that the fire
was started by one claimed to be defendant's
servant carrying a lighted lantern near the oil
that was flowing from a hose into the barge.

[Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 1270–1272; Dec. Dig.
⬡═330.]

4. APPEAL AND ERROR ⬡═265 — QUESTIONS
REVIEWABLE—FINDING.

A finding unexcepted to in the trial court
and not challenged on appeal must be taken as
conclusive for purposes of the appeal.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 1461, 1536–1551; Dec.
Dig. ⬡═265.]

5. MASTER AND SERVANT ⬡═330 — TORT OF
SERVANT—SCOPE OF EMPLOYMENT—BURDEN
OF PROOF.

In an owner's suit for destruction of his oil
barge by fire, where the person was shown
whose negligence in carrying a lighted lantern
near the oil caused the fire, the burden was on
plaintiff to show that such person was defend-
ant's servant acting in the scope of his employ-
ment in going upon the barge with the lighted
lantern.

[Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 1270–1272; Dec. Dig.
⬡═330.]

6. NEGLIGENCE ⬡═121—RES IPSA LOQUITUR.

In an action by the owner of an oil barge
for its destruction by fire, where the court found
that the fire was caused by the negligence of
a specified person, and such finding was sustain-
ed by the evidence, the doctrine of res ipsa lo-
quitur could not be applied to uphold the court's
alternative finding of negligence generally on
the part of defendant.

[Ed. Note.—For other cases, see Negligence,
Cent. Dig. §§ 217–220, 224–228, 271; Dec. Dig.
⬡═121.]

7. NEGLIGENCE ⬡═142—ACTION—JUDGMENT—
SUPPORT BY FINDING.

When the evidence in a suit for negligence
is sufficient to show that the injury of which
plaintiff complains was due to one or another
act or omission of the defendant, and that ei-
ther of such acts or omissions was negligent,
the trial court can properly find that plaintiff's
injury was due to defendant's negligence in one
or the other respects shown by the evidence, and
render judgment for plaintiff on such finding.

[Ed. Note.—For other cases, see Negligence,
Cent. Dig. §§ 400–403; Dec. Dig. ⬡═142.]

8. JUDGMENT ⬡═256 — SUPPORT BY FINDING.

When the alternative finding of the trial
court, in a suit for negligence, that either of
two acts or omissions of the defendant was neg-
ligent, is conditioned upon the insufficiency of
the evidence to sustain the first finding, and
such first finding is supported by the evidence,
the alternative finding cannot be considered in
support of the judgment.

[Ed. Note.—For other cases, see Judgment,
Cent. Dig. §§ 446–454; Dec. Dig. ⬡═256.]

9. NEGLIGENCE ⬡═55—LOADING OIL BARGE.

Where defendant was having plaintiff's oil
barge pumped full of oil at 3 o'clock in the
morning at a wharf from its pumping station
through a pipe line, ordinary care on its part
did not require that it keep some one constant-
ly on the barge to guard against the approach
of strangers near the flowing oil who might ig-
nite it.

[Ed. Note.—For other cases, see Negligence,
Cent. Dig. § 68; Dec. Dig. ⬡═55.]

Appeal from District Court, Galveston
County; Clay S. Briggs, Judge.

Suit by Charles Clarke, doing business as
Charles Clarke & Company, against the Tex-
as Company. From a judgment for plain-
tiff, defendant appeals. Reversed and re-
manded.

T. J. Lawhon, of Houston, for appellant.
James B. & Charles J. Stubbs, and Marion J.
Levy, all of Galveston, for appellee.

PLEASANTS, C. J. Appellee, Charles
Clarke, who conducts his business under the
name and style of Charles Clarke & Co.,
brought this suit against appellant, a corpo-
ration, to recover damages in the sum of $8,-
000, the alleged value of an oil barge owned
by appellee and which was destroyed by fire
which appellee alleges was caused by the
negligence of appellant. The barge, which
was known as the "Hopper," was destroyed
by fire on March 13, 1913, while being load-
ed with oil by agents of appellant at Pier
A, Southern Pacific Docks at Galveston.
Plaintiff's petition contains the following al-
legations of negligence on the part of de-
fendant and its employés upon which he re-
lies for recovery:

"That as plaintiff is informed, believes, and
therefore alleges, the agents and employés of de-
fendant performing said work were H. L. Stew-
art, E. C. Whitehead, A. Fleming, R. Hayden,
and others whose names are unknown to this
plaintiff, and which he has been unable to as-
certain after diligent inquiry. That while load-
ing said barge with oil, the defendant and its
said agents and employés negligently caused, or
permitted, the oil in said barge to catch fire,
thereby causing the complete destruction of said

⬡═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

barge, which was of 280 tons gross burden and was of the fair and reasonable value of $8,000.

"(2) That defendant was also negligent in not using or requiring its employés to use in and about the loading of said barge one or more electric lights, or other lights of such character or so screened and sheltered as not to set fire to said oil, or the gases or vapors thereof, which plaintiff avers were caused to ignite by the negligent failure on the part of the defendant, its servants and agents, to exercise proper care in the selection and use of reasonably safe lights. That but for such negligent failure the gas proceeding from said oil and the said oil would not have ignited and have destroyed said barge.

"(3) That the said fire was also proximately caused by the careless use or management on the part of said defendant, its said servants and agents, of one or more lights or lanterns, which were used by them on the night of March 12th and early morning of March 13, 1913, in coupling the hose, through which the oil was conducted from the tank or tanks on shore, into the body or hull of the barge, and which lights or lanterns, or not less than one of them, was also used by one of said employés in inspecting the said work and the progress of the loading, or allowed to be placed or remain on or near said barge and the oil being loaded thereon.

"(4) That plaintiff does not know which of the said employés of defendant held or placed the said light or lantern, or permitted the same to be done, but alleges that it was one of them, and that while not holding said light or lantern the same was placed on the barge, or near the barge on the wharf by said employé, or permitted to be placed there, and while being carried, or at rest, was in dangerous proximity to the cargo of oil being loaded and the gases proceeding therefrom.

"(5) That one or more of said lights was negligently brought or placed by said defendant, its servants and agents, or one of them, or allowed to be placed, so near to said oil and said barge that the gas or vapor from said oil, or the oil itself, came in contact with the flame of the light or lantern, and, being highly inflammable, caught fire, which fire was at once communicated to the entire cargo and the barge and it was impossible, by the exercise of any diligence whatever, to have extinguished the flames and have prevented the destruction of the barge, which plaintiff, however, succeeded in removing from its position at the pier so as to prevent probable loss or damage of cotton on the wharf and injury to other vessels, which were near by.

"(6) That defendant was charged with the duty of exercising reasonable care in the fulfilling its contract and undertaking to load said barge with oil, and if said care had been exercised by defendant, the fire would not have occurred, but defendant and its servants and agents failed to use ordinary care in the performance of their duty, and the occurrence of such fire, while defendant was loading such barge, primarily places the responsibility upon said defendant. That defendant's agents were negligent in bringing or allowing the fire or flame to be in too close proximity to the oil in the barge and to the oil, vapor, or gas emanating therefrom.

"(7) That defendant is a dealer in fuel oil, and was undertaking in the course of its business the loading of said barge, and was in the exclusive charge and control of said loading."

The defendant's answer contains special denials of each of the allegations of negligence contained in the petition. It also specially denies the allegation that E. C. Whitehead was its agent or employé and as such went upon or was engaged in the work of loading said barge, and the further allegation that the barge while being loaded was in the exclusive possession and control of defendant.

The trial in the court below without a jury resulted in a judgment in favor of plaintiff for the value of the barge with interest, amounting in the aggregate to the sum of $8,707.

The evidence shows that, while the barge Hopper was being loaded with oil by defendant's agents and employés, the gases arising from the oil became ignited, and the fire thus started destroyed the barge and its contents. There is no direct evidence as to how the ignition of the gas and oil occurred. The oil was being pumped into the barge from defendant's reservoir, which is situated about one mile from the pier at which the barge was lying. A pipe line extended from the reservoir to the wharf, and a flexible hose about 30 feet in length carried the oil from the end of the pipe line into the hold of the barge. At the time the oil became ignited, there was no opening into the hold of the barge except the manhole through which the oil was being pumped. The work of loading the barge began about 9 o'clock at night, and the explosion and fire occurred about 3 o'clock the next morning, shortly before the loading was completed.

The captain of the barge, who was in the cabin at the time the explosion caused by the ignition of the oil gas occurred, testified that just before the explosion he heard some one step on the barge from the wharf. Just after the explosion, E. C. Whitehead was rescued from the water alongside the barge and was found to be badly burned. After the fire a switchman's lantern was found in the wreck of the barge below the manhole through which the oil was being pumped at the time of the explosion. No lantern of this kind was used or kept on the barge. An employé of the defendant named Stewart had charge of the work of loading the barge. When he attached the hose to the hydrant at the end of the pipe line to start the flow of oil into the barge, he was assisted by two other men, the name or identity of neither of whom is shown. One of these men had a switchman's lantern similar to the one found in the bottom of the barge after the fire. After the hose had been properly adjusted and the oil began to be pumped into the barge, Stewart went from the barge to the pumping station and procured an electric flashlight for use in examining the progress of the loading. He was frequently on the barge for this purpose and made several reports by telephone to the engineer at the pumping station as to the progress of the work. Shortly before the fire occurred, he made an examination, and, finding that the loading was nearly completed, he went to the telephone, which was about 2½ blocks from the barge, to inform the engineer of this fact and advise him to "slow down" his pump. While Stewart was away from the barge for this purpose, the explosion occurred and the fire started.

The only evidence as to the employment of Whitehead by the defendant is the following

testimony of defendant's employé who was operating the engine at the pumping station on the night of the fire:

"Q. Were you working for the Texas Company in March last year? A. Yes, sir. Q. Did you know Mr. E. C. Whitehead? A. Yes, sir. Q. Was he working for that company? A. Yes. Q. Did you know what kind of work he was doing that night, yourself? A. No, sir; I don't know exactly what he was doing that night. Q. Do you know he was employed by the company? A. I know he was employed; I don't know whether he was employed by the company that night or not. Q. Did anything happen to him that night? A. He got burned that night. Q. Did you see him after he got burned? A. I seen him after he got burned. Q. Had he been working for the company, the Texas Company, so far as you know? A. As far as I know, he had been working for the Texas Company. Q. When was the last time you saw him working for the Texas Company before he got burned? A. I don't remember; I worked nights at that time. I don't know where Whitehead was working that night, if he was working; I don't know what Whitehead was doing that night."

This is the only testimony in the record bearing upon Whitehead's employment by the defendant, or the character and scope of the duties of his employment. Upon this evidence the trial court made the following findings of fact:

"The said Whitehead was employed by the Texas Company at the time of the destruction of said barge. While the evidence does not directly reflect that the said Whitehead was working, in the line of his duty at the time of such explosion, for the defendant, yet no evidence was offered by the defendant that he was not so employed by it and acting in the line of his duties at the time of such fire, when such knowledge was and should have been especially within the possession of defendant, and therefore the inference and presumption fairly obtains that, if he had not been in defendant's employ at such time and acting in the line of his duty, defendant would have offered testimony to such effect, and that defendant's failure to do so is attributable only to the fact that he was then in the defendant's employ and acting within the scope of his duties. * * *

"From all the foregoing facts found, and other evidence and circumstances in the case, I find that said cargo of oil was set on fire and said vessel burned up and destroyed through the negligence, severally and collectively, of the defendant to exercise proper care in the selection and use of reasonably safe lights in and about said vessel while being loaded, and in the careless use, and permitting of such use, by defendant's servant, Whitehead, of an oil-burning switchman's lantern in or about the manhole through which the flexible pipe projected into the vessel and discharged its cargo of oil while such Whitehead was acting within the scope of the duties of his employment.

"But if for any reason it should be held that such specific facts and other evidence and circumstances in the case should not be sufficient to support a general finding that said vessel was set on fire through the act of said Whitehead negligently bringing a lighted switchman's lantern in dangerous proximity to the inflammable vapors and gases given off by the cargo of oil being loaded on said barge, and that said Whitehead was at the time an employé of the defendant acting within the scope of his duties as such employé in and about the loading of said vessel, I find that said vessel was destroyed by fire through ignition of the vapor or gases thrown off from such oil communicating such fire to the cargo of oil and destroying the vessel, but find that it does not appear from the evidence just

what was the cause or causes of the ignition of such gases and vapors from said oil, though I further find that the occurrence was such as in the ordinary course of things does not happen if those who have the management of the loading use proper care, and that the defendant in this case having had exclusive control of the loading of such vessel and of the vessel also, in so far as in any wise connected with such loading, and the fire in said vessel having occurred in connection with such loading, during and at the time thereof, while being supervised and directed by defendant and its servants, and no explanation being offered by defendant, I conclude that said fire and the destruction of the vessel was proximately caused by the want of proper care and the negligence generally of the defendant."

By its second and third assignments of error the appellant assails the judgment on the ground that the findings of the court that Whitehead, at the time he caused the fire by bringing his open lantern near the manhole through which the oil was being pumped in the barge, was in the employment of the defendant and was acting within the scope of his employment, are without any evidence to support them.

[1, 2] We think the assignments should be sustained. There is no evidence, direct or circumstantial, sufficient to sustain the conclusion that Whitehead was in the employment of defendant and in the performance of the duties of his employment at the time he negligently set fire to the oil in plaintiff's barge, and the finding of the court that he was is based upon inference and presumption arising from the facts that defendant must have known whether or not he was in its employ and was performing the duties of his employment and offered no evidence showing that he was not. When a plaintiff has produced evidence sufficient to raise an issue as to the truth of his claim, and it appears from the nature of the case and the circumstances disclosed by the evidence that defendant is in possession of evidence which will show whether or not the inferences which can legitimately be drawn from plaintiff's evidence are true, and does not offer it, it is a fair and legitimate inference that the evidence so withheld by the defendant would, if produced, confirm the inferences arising from plaintiff's evidence. In such a case, the failure of defendant to produce the evidence can properly be considered in determining the issues raised by plaintiff's evidence, and for this purpose it may be said to have affirmative probative force. Pullman Car Co. v. Nelson, 22 Tex. Civ. App. 223, 54 S. W. 624. But plaintiff's case cannot be sustained when it depends wholly upon the failure of defendant, who is shown to be in possession of the facts, to disprove plaintiff's claim. To hold otherwise would be to abrogate the rule which places the burden upon a plaintiff to make out his case. Until this burden is discharged by evidence produced by plaintiff sufficient prima facie to make out the case alleged by him, the defendant is not required to offer any evidence,

and his failure to do so cannot, under any circumstances, be regarded as any evidence of the truth of plaintiff's claim. Railway Co. v. Butcher, 98 Tex. 462, 84 S. W. 1052; Railway Co. v. Leuschner, 166 S. W. 417; Railway Co. v. West, 174 S. W. 292.

The only evidence that Whitehead was an employé of defendant is the testimony of the defendant's engineer, which we have before set out in full. All that this testimony shows is that Whitehead worked for the defendant company in the month of March, 1913, the month in which plaintiff's barge was burned. There is not a word in the testimony indicating the duration of his employment or the character of the work he was employed to perform, and the witness expressly states that he does not know whether Whitehead was in the employment of the defendant on the night the fire occurred. We think it clear that this testimony does not raise the issue of Whitehead's employment by the defendant on the night of the fire, nor of the character and scope of his employment. The only other facts relied on by appellee to show such employment are that Whitehead, as found by the court, went upon the barge with a lighted lantern and set the oil afire, and that one of the unidentified men who assisted defendant's servant Stewart in coupling the hose to the hydrant at the end of pipe line had a lantern similar to the one found in the bottom of the barge after the fire, and which *it may be fairly inferred* was the lantern carried by Whitehead and which started the fire.

It seems to us that the inferences to be drawn from these facts do not rise to the dignity of evidence, but at most can only be regarded as surmises and suspicions, and cannot sustain the finding of the trial court.

[3, 4] We think the finding of the trial court that the fire was started by Whitehead carrying a lighted lantern near the oil that was flowing from the hose into the hold of the barge is sustained by the evidence. Neither party excepted to this finding in the court below, and it is not challenged in this court, and for the purposes of this appeal it must be taken as conclusive.

[5] It being shown that Whitehead was the person whose negligence was the proximate cause of the fire, the burden was upon plaintiff to show that he was defendant's servant and was acting within the scope of his employment in going upon the barge with the lighted lantern. Railway Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; Railway Co. v. Henefy, 99 S. W. 885; Christensen v. Christiansen, 155 S. W. 997.

[6] Appellant's sixth assignment of error is as follows:

"The court erred in its fifth finding and conclusion of fact in finding and concluding that the defendant being in exclusive possession of said barge when the same was destroyed, and offering no explanation as to the cause of said destruction, is guilty of negligence generally, because the court seeks to find a state of facts from which negligence would be presumed against the defendant under the rule of res ipsa loquitur; and plaintiff by his evidence having proved that said barge was destroyed by the act of E. C. Whitehead in going thereon with a lighted lantern, and the court having found that the said barge was so destroyed, is precluded from finding negligence generally based on the rule of res ipsa loquitur."

The court having found that the fire was caused by the negligence of Whitehead, and this finding being sustained by the evidence, the doctrine of res ipsa loquitur, upon which the court's alternative finding of negligence generally on the part of the defendant is based, cannot be applied.

In the case of Washington v. Railway Co., 90 Tex. 320, 38 S. W. 764, Judge Gaines explains the doctrine of res ipsa loquitur as follows:

"While the naked fact that an accident has happened may be no evidence of negligence, yet the character of the accident and the circumstances in proof attending it may be such as to lead reasonably to the belief that without negligence it would not have occurred. Railway Co. v. Suggs, 62 Tex. 323. 'Where the particular thing causing the injury has been shown to be under the management of the defendant, or his servants, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose from want of care.' Scott v. Dock Co., 3 H. & C. 596. See, also, to same effect, Transportation Co. v. Downer, 11 Wall. 129 [20 L. Ed. 160]. In such a case the question of negligence should be submitted to the jury."

We agree with appellee's counsel that the undisputed evidence shows that defendant had exclusive charge and control of the work of putting the oil in the barge. If the evidence only showed that the fire was caused by the ignition of the oil during the progress of the work, it may be that the doctrine of res ipsa loquitur would apply, because in the ordinary and natural course of things the oil would not have become ignited if those in charge of the work of putting it in the barge had used proper care; but the evidence, as we have before stated, sustains the finding of the trial court that the oil was ignited by the negligence of Whitehead in placing a lighted lantern near the flowing oil. When this fact is shown, there is no room for presumption or inference as to the cause of the fire, and the doctrine of res ipsa loquitur cannot be applied. Under this state of facts, the liability vel non of the defendant depended entirely upon the question of whether Whitehead at the time he caused the fire was a servant of defendant and engaged in performing the duties of his employment, and the burden was upon plaintiff to prove these facts. Sweeney v. Erving, 228 U. S. 232, 33 Sup. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905; Parsons v. Iron Works, 186 Mass. 221, 71 N. E. 572; Dentz v. Railway Co., 75 N. J. Law, 893, 70 Atl. 165; 29 Cyc. 592.

[7,8] When the evidence in a case is sufficient to show that the injury of which plaintiff complains was due to one or another act or omission of the defendant, and that either of such acts or omissions was negligent, a trial court might properly make a finding that plaintiff's injury was due to the negligence of the defendant in one or the other respects shown by the evidence, and render judgment for plaintiff on such findings. But when, as in the instant case, the alternative finding of the court is conditioned upon the insufficiency of the evidence to sustain the first finding as to the cause of the accident, and the first finding is supported by the evidence, the alternative finding cannot be considered.

Appellee by an independent counter proposition presents the theory that, regardless of the question of whether Whitehead was an employé of defendant and was performing the duties of his employment at time he negligently set fire to the oil, under the general allegations of negligence contained in plaintiff's petition the court could have found for plaintiff on the ground that defendant, being in exclusive control of the work of loading the barge with oil, and knowing the inflammable character of the oil, was negligent in permitting a stranger to go upon the boat and near flowing oil with a lighted lantern.

[9] It cannot be reasonably inferred from the evidence that ordinary care on the part of the defendant required that it keep some one constantly on the boat to guard against the approach of strangers near the flowing oil. The barge itself was in the custody and control of the master, who was plaintiff's employé. No one other than the servants of plaintiff or defendant had any business on the barge, and we think it conclusively appears from all of the circumstances shown by the evidence that it could not have been reasonably anticipated by the defendant's servant Stewart, who had charge of the work of loading the barge, that during the short time he was absent to report the progress of the work to the engineer at the pumping station a stranger would go upon the barge and negligently ignite the oil. To hold that he should have anticipated such an occurrence, especially at 3 o'clock at night, would be to require of him a much greater degree of care and precaution than is possessed by ordinary men.

It follows, from the conclusions stated, that the judgment of the court below must be reversed. There is nothing in the record which explains the failure of appellee to offer any evidence upon the question of whether Whitehead was an employé of defendant and acting in the scope of his employment at the time he caused the fire. Nor is there anything in the record which indicates or suggests that the evidence upon this question was not as accessible to appellee as to appellant.

In this state of the record, it may be we would be authorized, under our view of the law as before expressed, to here render judgment for the appellant; but, because it is apparent that the facts were not fully developed upon the trial in the court below, we think the cause should be remanded for a new trial, and it is so ordered.

Reversed and remanded.