## HOUSTON GAS & FUEL CO. v. PERRY
### et al.
### No. 9756.

Court of Civil Appeals of Texas. Galveston.
Nov. 17, 1932.

Rehearing Denied Dec. 1, 1932.

Vinson, Elkins, Sweeton & Weems, of Houston, for appellant.

Bryan, Cosby, Suhr & Bering and Chas. W. Bell, all of Houston, for appellees.

PLEASANTS, C. J.

This suit was brought by appellee Mrs. Perry, for herself and as next friend of her minor daughter, Daisy Perry, and also for the use and benefit of Veva Perry Capsas, Orliss Monroe Perry, Daniel H. Perry, and the Hartford Accident & Indemnity Company, against the appellant, Houston Gas & Fuel Company, to recover damages for the death of D. N. Perry, the husband of Mrs. Perry and the father of the individual plaintiffs, which it is alleged was caused by the negligence of appellant.

The petition alleges: "That the death of D. N. Perry resulted from injuries sustained in a natural gas explosion in the basement of the Stewart Building in Houston, Texas; and at the time of his injuries he was an employee of Hermann Hospital Estate, a subscriber to the Texas Workmen's Compensation Act, and that said subscriber carried compensation insurance with the defendant Hartford Accident & Indemnity Company. That the insurance company assumed full liability for compensation and agreed to pay appellee Mrs. D. N. Perry and her minor daughter, Daisy Perry, full compensation in the sum of Seventy-two Hundred Dollars ($7200.00), pursuant to the Texas Workmen's Compensation Act."

It was further alleged that the Hartford Accident & Indemnity Company had refused to bring this suit pursuant to section 6a, article 8307, of the Workmen's Compensation Act

(Rev. St. 1925) and that therefore it was made a party defendant to the said suit. By the pleadings, the right of the defendant Hartford Accident & Indemnity Company was fully recognized by the appellee Mrs. D. N. Perry to be subrogated to the extent of $7,200, the fixed compensation under the Workmen's Compensation Act.

No pleadings were filed by the defendant Hartford Accident & Indemnity Company, though it had been duly served with citation.

Plaintiff alleges that about three hours prior to the explosion, which resulted in the death of her husband, the boiler situated in the boiler room in the basement of the building adjoining the locker room in which deceased kept his clothes had been fired, and that when the deceased opened the door to enter the locker for his clothes the explosion of gas or gases which accumulated in the locker room occurred.

It was further alleged that the room and apartment of the basement of the Stewart building where Perry kept his clothes, and in which the explosion occurred, contained a large iron pipe approximately two or three inches in diameter, by which was transmitted from the main service line or lines of the gas company into said building the supply of natural gas necessary to furnish service to said building; that this large iron pipe enters the westerly wall of said room approximately two or three feet beneath the level of the sidewalk and paving. That such pipe was installed by the gas company, and at the point where the pipe entered the west wall of the room there was a large joint or elbow; that in installing the pipe which led to the gas meter within the building the gas company made an aperture or opening in the cement wall, but after such pipe had been installed it failed and neglected to close this aperture, but, on the contrary, left a large opening, thus enabling any gas which might be leaking from the mains, located from eight to ten feet westerly in the street, to escape through and enter said room where the deceased was trying to go at the time of the explosion. That five or six feet west of the place where the large pipe enters the westerly wall of such room, the defendant gas company had a large manhole, which was approximately three or four feet west of the manhole owned by the Stewart building, and the space between the two manholes at the time of the explosion was not filled, but was practically vacant so that gas could easily percolate from or around one manhole to and around the other manhole, and thus escape into said building. That three or four years prior to the explosion the owners of the Stewart building abandoned the use of oil for the operation of its boiler, and began to use natural gas, and that at this time the gas company placed in Fannin street and the vicinity of the street another gas high-pressure line, so that larger quantities of gas could be furnished the Stewart building and other customers needing a larger quantity of gas than they had formerly been using.

That at all of said times the gas company had in Fannin street another gas line approximately five to ten feet west of the sidewalk on the eastern side of Fannin street, known as the low-pressure line. That this low-pressure line was built some twenty-five or thirty years before the explosion, and much of the pipe was twenty-five years old, worn out, and had many leaks and holes therein, through which natural gas could easily escape and percolate to the room in which the explosion occurred.

The specific acts of negligence alleged were: (a) Failure to cement or stop up hole at point where large gas pipe entered the basement; (b) failure in installation of gas pipe to close opening or vacant space underneath ground through which natural gas might percolate in the direction of the locker room; (c) failure to put some chemical substance into its gas to give it a strong odor; (d) failure to provide adequate and efficient pipes, but, on the contrary, used old worn out pipes that were full of holes; (e) failure to inspect its pipes; (f) failure to replace old pipes with new ones; and (g) failure to so install large pipes in the Stewart building as to prevent the escape of gas into the basement.

As an alternative cause of action, the plaintiffs alleged that the gas lines and mains were under the sole custody, control, and supervision of appellant, and for that reason they could not state the exact negligent acts which caused the accumulation of the gas in the locker room.

Appellant filed a general demurrer, general denial, and general plea of contributory negligence.

At the close of the plaintiffs' testimony the appellant offered no testimony, but rested its case and filed motion for instructed verdict, which was overruled.

The case was submitted to the jury on special issues, and in response thereto the jury found: (a) That the explosion was caused by natural gas which leaked from the defendant's gas pipe; (b) that the leakage was due to the negligence of the appellant; (c) that such negligence was a proximate cause of the death of D. N. Perry; (d) that the defendant at the time it installed the four-inch gas line in the Stewart building failed to install same so as to prevent the entrance of gas from its mains in the street into the basement of the building; (e) that such failure was negligence; (f) that such negligence was a proximate cause of the death of D. N. Perry; (g) that appellant failed to replace the pipes in its gas lines in the vicinity of the Stewart building, so as to prevent the escape of gas therefrom; (h) that such failure was

negligence; (i) that such negligence was a proximate cause of the death of D. N. Perry; (j) that the explosion was not the result of fumes from a fuel oil tank in the locker room; (k) that the explosion was not caused from a combination of fumes from the fuel oil tank, paint, varnish, and oil in the locker room; (l) that Mrs. D. N. Perry had been damaged in the sum of $8,000; (m) that Daisy Perry, minor, had been damaged in the sum of $5,000; (n) that the reasonable funeral expenses was the sum of $200.

Judgment was rendered upon these findings for plaintiffs, Mrs. Perry and her minor daughter, Daisy. Judgment was also rendered in favor of the Hartford Accident & Indemnity Company for the sum of $1,313.50, the amount shown by the evidence to have been expended by it for doctors', nurses', and hospital fees paid by it for the treatment and care of deceased from the time of his injury until his death. The judgment further provided for subrogation in favor of said company to the extent of $7,200 out of the $13,200 awarded the plaintiffs Mrs. Perry and her minor child, Daisy. It was further adjudged that other plaintiffs for whom Mrs. Perry sued take nothing against appellant. All costs of suit were adjudged against appellant.

The foregoing statement of the nature and result of the suit is largely copied from appellant's brief.

Under its first and second assignments of error appellant complains of the judgment on the grounds that the court erred in not instructing a verdict for the defendant, because there was no evidence to raise an issue of negligence in permitting gas to escape from its pipes into the Stewart building and thereby proximately causing the explosion which resulted in the death of the deceased; and that the court further erred in refusing to set aside the verdict of the jury finding the defendant negligent in the respect stated, because the evidence was insufficient to sustain such finding.

■ We think the evidence clearly raises the issue of negligence on the part of appellant in the installment of its gas pipe by which gas was conducted into the locker room, and in the care and maintenance of its gas line pipes and manholes by and through which gas from its street pipes was carried to the Stewart building, and that such negligence was the proximate cause of the explosion which caused the death of Perry. We are also of opinion that the finding of the jury on this issue is not so against the weight and preponderance of the evidence as to authorize this court to set it aside.

The evidence shows that the Stewart building had been equipped with gas service for the past twenty-five years, but had only used gas as fuel for about three years, prior to which time oil had been so used. When the change in fuel was made from oil to gas, the appellant, which owned the gas distributing lines by which the building was served, installed the fuel gas piping and appliances in the basement of the building up to the boiler. The pipe that furnished the fuel for the boiler was a high-pressure pipe, and came into the building through the locker room, five or six feet distant from the point at which the original low-pressure gas pipe, which supplied the gas used in the building for lighting purposes, entered the basement of the building.

The deceased, who was employed by the owner of the building as building mechanic, kept his working clothes and tools in the locker room. When he came to work on the morning of the explosion he passed through the boiler room to the locker room to change his clothes, and as he opened the door from the locker room into the boiler room the explosion occurred. There was no evidence of any leakage of any of the gas pipes inside of the building, but, on the contrary, these pipes are shown to have been in good condition.

The evidence does show that the gas pipes in the street in front of the building and those leading into the building other than the high-pressure pipe taking the gas to the boiler were old, having been in use for twenty-five years or more, and some of them were worn and cracked, and that the manhole through which some of the old pipes ran was only a few feet distant from the manhole through which the high-pressure pipe ran, and that there were openings under the ground between these manholes through which gas escaping from the old low-pressure lines could find its way into the manhole for the high-pressure line and along the outside of the pipe leading therefrom through the opening in the basement wall through which the pipe entered the building. It was also shown that two gas explosions had occurred near the Stewart building a short time prior to the explosion which caused Perry's death; one in the street near the building, and one in an adjoining building. None of the pipes inside the building were injured by the explosion, but a witness who arrived on the scene shortly after the explosion testified that there was burning gas in the manhole and along the pipe leading therefrom.

All of the distributing gas lines in the street and outside of the building and the manholes through which they ran were in the exclusive possession and control of the appellant company, and it offered no evidence as to the condition of these lines and manholes at the time of the explosion.

It is clear, we think, that the jury could reasonably infer from this evidence that the explosion was caused by gas which escaped from defective pipes of appellant from and by which it was carried into the building, and following the lines of least resistance got into the locker room through the openings in the

wall of the building left by appellant when it installed the high-pressure fuel line. The fact that appellant had exclusive possession of all these pipes and gas distributing appliances and must or should have had information as to their condition, and yet remained silent on this subject, adds to the probative force of the other facts in evidence which clearly raise an issue as to the defective condition of appellant's gas pipes. In this state of the evidence we cannot hold that the findings of the jury complained of in these assignments are not sustained by the evidence. The force of all these facts and circumstances is not overcome by the evidence introduced by appellant, which shows there was a fuel oil tank in the locker room which contained oil that had remained in the tank ever since the change of fuel from oil to gas was made some three years prior to this explosion, and that fumes from this oil and from paint and varnish, which was also kept in the locker, could have caused the explosion. There was no evidence that these possible fumes had accumulated in the locker room at any time prior to the explosion, and the jury were fully justified, under the evidence as a whole, in finding as they did, that gas escaping from appellant's defective pipes was the proximate cause of the explosion, and that fumes from the oil, paint, and varnish in the locker room did not cause or contribute thereto. Fakes & Co. v. Ft. Worth Gas Co. (Tex. Civ. App.) 280 S. W. 234; Caddo Gas Co. v. Jeffries (Tex. Civ. App.) 271 S. W. 108, 109.

■ The rule in this character of case is well settled, and is thus clearly stated by Judge Sharp of the Commission of Appeals in the case of Gulf, C. & S. F. Railway Company v. Dunman, 27 S.W.(2d) 116, 118, 72 A. L. R. 90: "When the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

While it appears to us to have been unnecessary, appellees' petition, as we have before shown, pleaded the facts upon which this rule is based, and thereby put the appellant upon notice that they intended to invoke the application of the rule.

There is no merit in appellant's complaint that the form of submission of issues 3, 7, 8, and 9 was duplicitous, in that these issues were not confined to defects in the piping of the high-pressure line, and there was no evidence showing any defective piping in the low-pressure line.

■ ■ As we have already stated, the rule is that when the explosion is shown to have been caused by gas from pipes and appliances under the exclusive control of the appellant,

the burden shifted to it to show its freedom from negligence (28 Corpus Juris, page 600), and the plaintiffs were not required to show in what particulars the negligence existed; but, as we have before stated, we think there is ample evidence to sustain the finding that the gas escaped from defective pipes in the low-pressure line.

We find no error in the form of submission of any of the issues of negligence submitted to the jury, and none of appellant's assignments presenting such complaint can be sustained.

■ There was no error in the failure of the court to limit the right of recovery of the minor, Daisy, to what she would have received from her father during her minority. The case of Hines v. Walker (Tex. Civ. App.) 225 S. W. 837, cited by appellant in support of this ground of complaint, arose under the Federal Employers' Liability Act (45 USCA §§ 51–59) and the court in deciding the question on appeal was constrained to follow the opinion of the United States Supreme Court, but stated in its opinion that it was perhaps the settled law of this state that the amount of recovery of a minor was not limited to what might be received from the father during the minority of the plaintiff.

It is the settled rule in this state that a minor is not restricted in cases of this kind to recovery for what the father would have contributed to the minor during minority, but is entitled to recover what the evidence shows the minor might reasonably expect to receive from the father both before and after the termination of minority. The question is one of fact rather than law. Lancaster v. Magrill (Tex. Civ. App.) 244 S. W. 1078; Paris & G. N. Railway Company v. Robinson (Tex. Civ. App.) 127 S. W. 294; Galveston, H. & S. A. Railway Company v. Puente, 30 Tex. Civ. App. 246, 70 S. W. 362.

■ No point is made by the appellant that the evidence in this case is not sufficient to sustain the verdict of the jury in favor of the minor for the sum of $5,000. It is contended, however, that there is no evidence to raise an issue of contributions by the father to the minor after she reached her majority.

We think the evidence does raise the issue of such contributions. It was shown that the deceased was a man of frugal habits; in good health and had steady employment; that his earnings averaged $40 per week, out of which he contributed $30 to his wife and minor daughter, who was fourteen years of age at the time of her father's death; that the minor who was attending day school often visited her father at his place of work and knew more about his earnings than her mother; that she went to see her father while he was at the hospital as soon as she got out of school; that the father took the best care of

the daughter, and was liberal and generous with her at all times.

■ We do not think the evidence raises the issue of contributory negligence of the deceased, and the court did not err in refusing to submit such issue.

■ The trial court did not err in refusing to sustain appellant's objections to the testimony of witness for appellee, that in excavations made by the appellant near the Stewart building shortly after the explosion some of the gas piping dug up by it was old, leaky, and had holes and splits or cracks therein.

■ The rule against admitting in evidence as proof of negligence the fact that the defendant made improvements or changes in the premises or instrumentalities alleged to have been negligently constructed or maintained does not prohibit direct testimony showing that the defendant when it made such changes or improvements disclosed that prior thereto the premises or instrumentalities were negligently maintained.

■ We cannot agree with appellant's contention that no judgment could be properly rendered for the Hartford Accident & Indemnity Company, because that company has filed no pleading asking any recovery against appellant, and appellees allege in their petition that this company had acknowledged and assumed to pay its full obligation under its indemnity policy executed in favor of the employer of the deceased under the provisions of the Workmen's Compensation Act, and had refused to bring this suit against appellant. Article 8307, § 6a, of the Workmen's Compensation Statute (Revised Statutes 1925), gives the right to the insurance company to be subrogated to the beneficiaries' right against a negligent third party to the extent of its payment under its policy. In recognition of this right of the insurance company, appellee's petition asks that the Hartford Company be so subrogated to the extent of its assumed liability to the beneficiaries of the policy for whom appellee brings the suit, and further asks that appellee recover for the use and benefit of the Hartford Company the amount of doctors', nurses', and hospital fees paid by the Hartford Company under its policy for care and treatment of the deceased. It is agreed by the parties that the amount of such fees is incorrectly stated in the judgment; the correct amount being $803.50, instead of $1,313.50. With this correction, no question is raised as to the reasonableness of the charges, nor their payment by the insurance company under its policy contract.

In this state of the record we can see no sound reason for not permitting the recovery by appellee for the use and benefit of the insurance company of the amount of these fees, and permitting the subrogation of the insurance company to the damages which the evidence shows the appellees to have sustained by the death of the deceased through the negligence of the appellant, to the extent of the company's admitted liability to plaintiffs for such damages. If appellee had not brought the suit for the benefit of the Hartford Company as well as for the other plaintiffs, that company, having been served with citation as a party defendant, could have set up these claims of subrogation and recovered judgment therefor. When it found, however, that appellee's petition recognized its rights and sought their enforcement, we can see no reason for denying it the right to acquiesce in appellee's suing for its benefit asking for such judgment of subrogation as the facts would show should be rendered for it. In this situation the Hartford Company was not required to file a pleading in its own name asking the enforcement of its right of subrogation.

■ The words "pecuniary loss" are words of common use, and have no such special technical or legal meaning as used in the charge of the court, which required the court to define their meaning to the jury. Our courts have gone a long way in requiring the court to define words used in the charge to the jury. If these words as used in this charge require a definition, it seems to us it could only be upon the assumption that the knowledge of the jury of our language does not extend beyond the words used in our first or second school readers, and we think it would be unreasonable to assume such illiteracy on the part of any jury.

If we have failed to point out and discuss any of the numerous complaints presented in appellant's brief, all of them have been duly considered, and none of them can be sustained.

■ Under the agreement of the parties, however, our former judgment of affirmance must be set aside, and the judgment of the trial court reformed by changing the amount of recovery for the doctors', nurses', and hospital fees from $1,313.50 to $803.50. We will also reform the judgment and make it fully conform with the pleadings by decreeing the recovery of $803.50 to the appellees for the use and benefit of the Hartford Accident & Indemnity Company. This reformation will not be at the cost of appellees, since appellant did not in its motion for new trial call this error to the attention of the trial court.

As so reformed, the judgment is affirmed.

Reformed and affirmed.