## MERCHANT et al. v. HOUSTON GAS & FUEL CO.
### No. 10045.

Court of Civil Appeals of Texas. Galveston. Jan. 10, 1935.

Rehearing Denied Feb. 14, 1935.

King, Wood & Morrow and H. E. Cox, all of Houston, for appellants.

Baker, Botts, Andrews & Wharton, G. G. Gannon, and John T. McCullough, all of Houston, for appellee.

PLEASANTS, Chief Justice.

This is a suit by appellant J. C. Merchant, who sues for himself and as next friend of his minor children and also for the use and benefit of the father and mother of his deceased wife, Gertrude Merchant, to recover from appellee damages for the death of the deceased, alleged to have been caused by the negligence of appellee.

Plaintiff's petition alleges, in substance:

That appellee (defendant) had for some time prior to January 15, 1932, been supplying gas for domestic uses in a residence building in the city of Houston occupied by O. A. Massey and wife, who had resided in the building for about twelve months, during all of which time they had purchased gas from defendant for use in a kitchen range or cookstove owned by them and located in the building so occupied by them. This gas was brought into the building through a pipe leading from defendant's gas main in the street upon which the property was situated and a meter owned and maintained by the defendant located in the rear of the building. That Massey and wife moved from said premises on January 15, 1932, taking all their furniture and household effects. That on the preceding day they notified the defendant of their intended change in their place of residence and requested it to discontinue furnishing them gas at said place and to make service connection at the place to which they would move on the next day, which the defendant agreed to do. That, on the morning of the day following this notice and agreement, defendant having failed to comply with its agreement to turn off the meter and sever connection with Massey's stove, Massey disconnected the stove or range from the defendant's pipe which carried the gas from the meter in the rear of the house under the floor of the kitchen and through a hole in the kitchen floor where it was connected with Massey's stove; that before disconnecting the stove from the pipe coming up through the hole in the floor Massey turned off the gas from the meter by shutting the stopcock or valve on top of the meter. "That the pipe, elbows, and pipe fittings on the inside of said house and leading from the pipe connected with the gas meter aforesaid, were the property of the said O. A. Massey, and upon disconnecting said stove as aforesaid, he removed such pipe, elbows and pipe fittings, leaving only the pipe leading from the meter aforesaid into the house mentioned, such pipe being left with the end thereof under the floor of the kitchen in said house, such end being open and not in any manner stopped or plugged."

"That the plaintiff J. C. Merchant and the minor plaintiffs above mentioned, together with the deceased, Gertrude Merchant, moved into the house located at the address above mentioned on the evening of January 26, 1932. That neither J. C. Merchant nor his wife turned on the gas at such address; that they did not desire to use gas, and had no appliances with which to utilize the same. That on the morning of January 27, 1932, the said Gertrude Merchant struck a match in the kitchen of such house, when the gas which had accumulated in the kitchen, and in the

walls and ceiling of the house, exploded, burning and injuring her to such extent as to later cause her death. That the meter located at the address aforesaid leaked and permitted gas to escape through it and into the pipe leading under the kitchen floor of such house, and from thence through the open end of such pipe into the house proper, which caused the accumulation of gas in the house."

The grounds of negligence alleged by the plaintiffs in their petition in the trial court were:

"(a) That the defendant failed to go to such house at the time Massey and wife removed therefrom and seal, lock or plug the meter so that gas would not leak from said meter into the house.

"(b) That the defendant failed to make an inspection of the house after the Masseys had removed therefrom in order to determine that the meter was free from leaks and in a safe condition and that no gas was escaping or could escape from or through said meter into the house.

"(c) In having the meter located at the house mentioned equipped with a defective valve or cut off so that when the gas was cut off by Massey at such meter the petcock, valve or cutoff on the meter did not effectually stop the flow of gas from said meter, but permitted gas to leak from the meter into the house."

The defendant answered by general demurrer, general denial, and pleaded specifically that the plaintiff J. C. Merchant and the deceased, Gertrude Merchant, were contributorily negligent in the following respects:

"(a) In opening or having opened, without securing the permission of the Houston Gas & Fuel Company to do so, the cut off valve on the service line so that gas could enter the house piping.

"(b) In turning on the gas at the meter or having the same turned on, without inspecting or having inspected the gas pipes and appliances located on the premises to see that the same were tight and sound and free from leaks.

"(c) In igniting or causing a fire in the premises known as 204 North Palmer Street when and after they had detected the odor of gas in and about the premises."

The cause was tried with a jury, and, after hearing the evidence, the trial court instructed the jury to return a verdict in favor of defendant, and, upon the return of such verdict, ordered a judgment in accordance therewith.

■ Under appropriate assignments and propositions, appellants complain of the judgment on the ground that the evidence raised the issue of negligence of defendant as alleged in plaintiffs' petition and the court was not authorized to take the case from the jury.

We think the evidence was clearly sufficient to raise the issue of negligence on the part of the defendant. It is true that Massey testified that, before he disconnected his stove fittings from defendant's pipe which conducted the gas from the meter to the hole in the floor of the kitchen where it connected with Massey's stove pipe fittings, he cut off the gas from the meter by taking a wrench and pulling the valve around so that no gas could come through the meter into the house, and that he knew how to turn the gas on and off through a meter, but that he put no seal or lock on the meter.

Mr. Bailey, a witness for appellant, testified that, when the stopcocks of the meter were turned off, he did not think "there was a possible chance for the gas to escape through the meter," and that he thought from his investigation at the scene of the explosion that the escaping gas came from "leaky lines."

It was also shown that the gas supplied by defendant to its customers had a decided odor, and Massey and wife testified that they did not smell any odor of gas in the kitchen after he disconnected his stove on the morning of January 15th.

Plaintiff Merchant testified that he did not smell any gas in the house on the evening of January 26th when he moved to the premises, and that he did not hear his wife say anything about smelling gas, but that they were out of the house practically all of the evening.

Another witness for appellant testified that he was in the house while it was being papered before plaintiff Merchant moved into it and did not smell any gas. This witness did not testify that the kitchen was being papered, or that he was in the kitchen during the time he was in the house.

The undisputed testimony shows that plaintiff did not use a gas stove and did not turn on or intend to use defendant's gas. They had a small gasoline cooking stove which was placed in the kitchen when they moved to the building on the afternoon of January 26th. They did no cooking that evening. When Mrs. Merchant went into the kitchen the next morning for the purpose of preparing breakfast, she struck a match and

the explosion of gas which caused her death immediately occurred.

Such being the state of the testimony, the only fact issues in the case were whether the gas in the kitchen which exploded and caused the death of Mrs. Merchant when she struck the match in the room had accumulated in the room through defendant's meter and the unplugged pipe under the floor and up through the hole in the floor, and whether the defendant was guilty of negligence in permitting the meter and pipe to remain in this condition from the time Massey left the building until Merchant moved therein.

Appellee very earnestly contends that, because the gas which caused the explosion may have emanated from the gasoline in appellants' cooking stove the court was authorized to take the case from the jury.

This contention cannot be sustained. In addition to the facts before stated, there is no evidence that the explosion, which was shown to have been a violent one, occurred in or about the gasoline stove, and no evidence that there was any leak in that stove, or that it was in any way injured by the explosion.

The appellant Merchant testified, in substance, that the explosion occurred at 5:30 or 6:00 o'clock on the morning of January 27th; that at the time of the explosion he was in the front room of the house, where he and his wife had slept, holding the baby which had awakened, and that his wife had gone into the kitchen to cook breakfast; that she had her back to him when she lit a match, and the room went into a blaze, and she ran back into the front room with her clothes on fire; and that he got his overcoat and smothered the fire out. He then describes how badly her body was burned, and further relates how she was taken to a hospital as soon as an ambulance could be obtained, and died there from the effects of her burns on January 30th. This is all of the evidence upon the theory that the explosion may have been caused by vapor or gas emanating from gasoline which is, as a matter of common knowledge, a highly explosive and inflammable substance. If it be conceded for the sake of argument that the evidence was sufficient to raise an issue of fact as to whether the explosion was caused by the ignition of gas coming from defendant's meter and pipes into the kitchen in which the match was struck, or vapor that emanated from gasoline in appellants' cooking stove, we know of no rule of law or reason which would deny the appellants the right to have a jury pass upon the question of what was the cause of the explosion.

The witness Bailey testified that the defendant gas company, when it cut off gas from a house from which one of its customers removed, followed the custom of locking and sealing the meter, and that the meter at this house had not been locked or sealed. There is no evidence contradicting this testimony.

Other witnesses for the appellant who lived on property adjoining that on which the explosion occurred testified that, on the day Massey moved from the premises, and for several days thereafter, they remained at home and were in position to observe any employee of defendant who had gone there to inspect the condition of the meter and see that it was properly locked and sealed, and they saw none of defendant's employees on the premises.

The undisputed evidence shows that, if the meter had been locked and sealed, the possibility of gas from defendant's lines escaping through and accumulating under the house and through the hole in the kitchen floor into the kitchen where it was ignited by the match when struck by Mrs. Merchant would have been greatly lessened. From the evidence as a whole, the jury could have reasonably inferred that, if appellee had kept its promise to Massey to properly attend to the closing of the meter in the way it customarily performed that service, the explosion which caused the death of Mrs. Merchant would not have occurred, and that its failure to perform its duty in this respect was the proximate cause of the death of Mrs. Merchant.

If appellee's contention is sound, then in every case for recovery of damages for injury caused by the alleged negligence of the defendant, when the evidence raises an issue as to whether the injury was caused by the alleged negligence or by an independent intervening cause, the defendant would be entitled to an instructed verdict. We know of no decision in this state which tends to support this contention of appellee.

We deem it unnecessary to cite authorities on the general proposition that the circumstantial evidence taken as a whole raised the question of appellee's negligence in the respects before indicated.

In many respects the case of Houston Gas & Fuel Co. v. Perry (Tex. Civ. App.) 55 S.W. (2d) 901, is similar upon its facts to this case, and the cases therein cited also sufficiently support our conclusion herein expressed.

If error is shown in other assignments and propositions presented by appellants, it is not such as is likely to occur upon another trial, and therefore such remaining propositions need not be discussed.

For the error indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

Appellee has filed a motion for rehearing in which it is contended that every material finding of fact and conclusion of law contained in our opinion is erroneous. In support of this motion counsel for appellee have presented a written argument.

We deem it proper to reply to some of these arguments.

The argument first complains of the statement in the opinion that "The witness Bailey testified that the defendant Gas Company when it cut off the gas from the house from which one of its customers removed followed the custom of locking and sealing the meter and that the meter at this house had not been locked or sealed. There is no evidence contradicting this testimony."

In support of this complaint, our attention is called to a ruling of the trial court which appears in the statement of facts, to the effect that the testimony of the witness Bailey, that the meter was not locked when he examined it after the explosion, was inadmissible.

In so far as our finding above quoted states that the testimony of the witness Bailey "that the meter at this house had not been locked," the finding is inaccurate; his statement being that the meter was "not locked when he examined it" a few hours after the explosion.

Appellee objected to this statement of this witness on the ground that "the condition of the meter after the explosion could not be material." The court ruled that, unless or until this statement was followed by evidence that there had been no change in the condition of the meter after the explosion and before its examination by the witness, the testimony was inadmissible, and instructed the jury not to consider this statement of the witness.

The fact remains, however, that the part of the testimony of this witness in which he states that the explosion was an explosion of natural gas which, in his opinion, escaped from leaking pipes, that gas could not have escaped from the meter if it had been locked, and that the defendant company, whenever it cut off the gas from a house from which one of its customers removed, followed the custom of locking and sealing the meter, is not contradicted.

Appellee next complains of the statements in our opinion "that there is no evidence that the explosion occurred in or about the gasoline stove, and no evidence that there was a leak in the stove." Appellee does not complain of our further statement immediately following the statements next above set out, that there was no evidence that the gasoline stove was injured by the explosion. The accuracy of the statement of the testimony of the plaintiff Merchant, set out in the opinion in support of the findings complained of by appellee, is not questioned. From this testimony it appears that, when Mrs. Merchant went into the kitchen for the purpose of preparing breakfast, "she lit a match and the room went into a blaze, and she ran back into the front room with her clothes on fire." Neither Merchant nor any other witness testified that Mrs. Merchant struck the match for the purpose of lighting the stove, or that she was at the stove for the purpose of lighting it when the explosion occurred. The question was not asked the witness Merchant, notwithstanding the fact that he testified that he saw her standing with her back to him when she struck the match.

Appellee further complains of our statement that other witnesses in the case testified that they were in position to observe any employee of the defendant who had gone to the vacated premises to inspect the meter and see that it was properly locked, and saw none of defendant's employees on the premises.

This statement may be too broadly made, and should have referred to the day the property was vacated and a few days thereafter. This was all that this court intended by the finding. When so restricted, the reply of the witness Morrow, who lived on the lot next the lot on which the house where the explosion occurred was situated, and had lived there for a year prior to the explosion and was living there at the time of the trial, "I guess it is," to a question by appellee's attorney on cross-examination, "If it was not a fact that some one might have been there a thousand times and cut off that meter and stayed three or four minutes and you would not have seen them?" does not destroy the value of the witness' testimony that he was at his home situated on the lot adjoining the lot on which the vacated house was situated, and spent most of his time in his room in the rear of his house, just opposite the rear of

the vacated house where the meter was located, on the day the house was vacated and for several following days, and saw no employee of defendant on the vacated premises at any time.

Another neighbor of Massey, who lived on a lot adjoining the Massey place on the opposite side from the premises occupied by Morrow, testified that she was home on the day the Massey house was vacated and for several days thereafter and was in the back portion of her house opposite the rear of the Massey house, or in her back yard, most of her time during the period stated, and saw no employee of appellee on the Massey premises.

In addition to this, the evidence being sufficient to authorize the jury to infer that the explosion which injured Mrs. Merchant was an explosion of natural gas, and that no gas could have escaped from the meter if it had been locked, as was the usual custom of the defendant, the failure of the defendant, who is presumed to know whether any of its employees were sent to the premises to have the meter properly closed, which presumption is aided by the statement of the witness Morrow that after the explosion he saw an employee of the gas company doing something to the meter, to disclose such information as it had on this question, should be given probative force against the defendant. Texas Company v. Charles Clarke & Co. (Tex. Civ. App.) 182 S. W. 351; Williams v. Freeport Sulphur Co. (Tex. Civ. App.) 40 S.W.(2d) 817, 825.

The testimony of the witness Bailey shows that he did not examine the gas pipes under the house to see if they were leaking, and that his opinion that gas came from leaky pipes was based solely on his conclusion that, the meter being shut off when he examined it, the gas had not escaped through it.

We have never thought the rule of res ipsa loquitur applies to this case, and that rule is not mentioned in our original opinion. On the contrary, our opinion that the evidence required the submission of the question to the jury is based on our conclusion that it is more reasonably probable from the evidence as a whole that the explosion was due to the negligence of the defendant in its failure to properly lock or seal the meter than to any other cause.

We adhere to that conclusion, and the motion for rehearing is refused.

Refused.